**U. S. ex rel. Perry YOUNG, Petitioner,**

v.

**SUPERINTENDENT, GREENHAVEN CORRECTIONAL FACILITY, Respondent.**

**No. 76 Civ. 749 (CHT).**

United States District Court, S.D. New York.

July 6, 1976.

Perry Young, pro se.

Louis J. Lefkowitz, Atty. Gen., Albany, for respondent; Ralph Lewis McMurry, Asst. Atty. Gen., New York City, of counsel.

MEMORANDUM

TENNEY, District Judge.

Petitioner Perry Young, *pro se,* seeks an order of this Court granting his application for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241(d) and 2254. For the reasons set forth below, the application is denied and the writ is dismissed.

Petitioner is presently incarcerated in the Greenhaven Correctional Facility, Stormville, New York, serving an indeterminate sentence not to exceed three years pursuant to a judgment of conviction, after a trial by jury, of petit larceny and grand larceny in the third degree. This conviction was affirmed by the Appellate Division, Second Department, without opinion on May 30, 1975. Leave to appeal was denied by the New York State Court of Appeals on October 13, 1975.

Petitioner cites seven areas of error which he alleges rise to constitutional proportion: (1) that the complaining witness committed perjury, (2) that another witness, one Detective Maloney, also committed perjury, (3) that there was a defective identification procedure, (4) that there was no evidence of the commission of the crime, *i. e.,* that the complainant's pocket was picked, (5) that all material evidence was illegally obtained, (6) that there was police testimony of a *modus operandi* employed by petitioner, when, in fact, there was no evidence of such a *modus operandi,* and (7) that the complainant violated certain laws for which he was not prosecuted. The Court will consider these allegations seriatim.

 Petitioner first alleges that the complaining witness committed perjury and changed his testimony many times. Petitioner's second claim is premised upon the same alleged defect in the testimony of Detective Maloney and both of these claims can be considered together. Both of these witnesses testified at the trial and were subject to cross-examination. The issue of their credibility was for the jury and is not cognizable on federal habeas corpus. *United States ex rel. Griffin v. Vincent,* 359 F.Supp. 1072 (S.D.N.Y.1973); *People of State of New York v. Baker,* 354 F.Supp. 162 (S.D.N.Y.1973).

"Conflicts in the testimony of a witness and between the testimony of witnesses are common at trials. Petitioner disputes the word of certain of the witnesses. He gave his version at the trial. The conflicts were resolved by the jury. This court is not to be expected to retry the issues which were thus disposed of in the state court." *Collins v. Heinze,* 125 F.Supp. 186, 188 (N.D.Cal.), *aff'd,* 217 F.2d 62 (9th Cir. 1954), *cert. denied,* 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955).

Here, petitioner testified and the jury apparently chose to disregard his testimony and believe the testimony of the prosecution witnesses. No issue is presented for this Court. Only where the prosecution knowingly allows perjured testimony to come in will the federal court intervene on a habeas corpus petition. *Burks v. Egeler,* 512 F.2d 221 (6th Cir. 1975); *Wild v. State of Oklahoma,* 187 F.2d 409 (10th Cir. 1951); *Bradshaw v. State of Oklahoma,* 398 F.Supp. 838 (E.D.Okl.1975); *Imbler v. Craven,* 298 F.Supp. 795 (C.D.Cal.1969), *aff'd,* 424 F.2d 631 (9th Cir.), *cert. denied,* 400 U.S. 865, 91 S.Ct. 100, 27 L.Ed.2d 104 (1970). No such claim has been raised here. Also, the Court should note that there appears to have been a failure to exhaust the claim as to the testimony of Detective Maloney. *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

 The third claim pressed by petitioner is that there was a defective identification procedure employed in that the complainant was shown only one photo of petitioner rather than a photo spread and also that an identification in the police station was improper since petitioner was not in a proper line-up. These claims were mentioned for the first time by petitioner in his *reply* brief on appeal, and then only with regard to another issue. Thus, there would appear to be a failure to present the issue to the courts of the state in the first instance thereby preventing this Court from

considering the issue. *Picard v. Connor, supra,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438. The claim, however, is frivolous since both identification procedures were ruled to be inadmissible and were not allowed in at the trial. Also, it was established that there was clear and convincing evidence that complainant had the ability to make an independent in-court identification of petitioner clear of the taint.

■ Petitioner next claims that there was no evidence that complainant's pocket was picked. This question goes to the sufficiency of the evidence. This claim is essentially one raising questions of state law and does not rise to federal constitutional dimensions. *United States ex rel. Terry v. Henderson,* 462 F.2d 1125, 1131 (2d Cir. 1972). Only where a conviction was based on a record lacking *any* evidence of an element of the crime charged would the attack on the conviction rise to constitutional magnitude. *Vachon v. New Hampshire,* 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974). Such is not the case here. There was evidence that complainant had his pay envelope when he went into the room, that he did not have it when he came out, and that complainant testified that when he was pushed on to the bed by petitioner he felt his pay envelope go. Only petitioner and complainant were in the room at the time. Thus, there was some evidence of a taking from the person from which the jury could draw its own conclusion. This claim must fail.

Petitioner also claims that all material evidence against him was illegally obtained. Specifically, this claim runs to those items of evidence seized in petitioner's apartment at the time of his arrest. These same items had been the subject of a motion to suppress prior to petitioner's trial. A hearing was held which spanned two days and encompassed the testimony of five witnesses. Following the hearing, the trial judge issued a thorough written opinion detailing the findings of fact and conclusions of law reached by the court. In sum, it was his holding that the arrest of the petitioner was proper, based on his finding of probable cause and that the seizure of certain items of evidence was proper under the "plain view" doctrine.

■ The findings of the state court after a full and fair hearing are entitled to a presumption of correctness. 28 U.S.C. § 2254(d). *See also United States ex. rel. Williams v. LaVallee,* 487 F.2d 1006 (2d Cir. 1973), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). Here, there was a full and fair hearing and the findings of the state court were expressed in a written opinion. This Court will therefore accept those findings as correct. In so doing, the Court notes that it has examined those findings and concludes that they are supported by the record.

Briefly stated the facts are as follows: Following the alleged crime, complainant went to a police booth and reported the incident. A patrolman responded to the scene and when complainant described the incident and gave the address, the patrolman, recognizing the address as that of petitioner, took the complainant to the scene. The apartment in question was padlocked and the two returned to the station. Complainant then spoke to three detectives at the station who, after hearing the facts of the incident, expressed familiarity with petitioner and a similar *modus operandi* employed by him in the past. Detective Maloney testified at length that he knew petitioner, had seen him dressed in women's clothing on many occasions, had seen him in the area where complainant was "picked up" by him, and had arrested him in the past. In fact, his testimony was that on the date in question, Maloney had seen petitioner in the same female attire described by complainant. When complainant was shown a photo of petitioner, he made an immediate confirming identification. The three detectives and complainant then proceeded to the apartment of petitioner and by peering through a window they were able to see petitioner and another man asleep inside. The detectives then called to petitioner through a window, announcing themselves as police officers, telling petitioner that he was under arrest for the

robbery of complainant, advising petitioner of his *Miranda* rights, and requesting that the door to the apartment be opened. At this point, petitioner and the other man began swearing at the police and telling them to go away. Several minutes passed and the door was not opened, so the police forced the lock and entered the apartment. Upon entering the apartment, both of the occupants were placed in custody and once again given their *Miranda* rights. While the two males were getting dressed, one of the detectives saw several articles of feminine apparel and a wig which fit the description given by complainant lying on the floor of an open closet. These were seized by the officer. Petitioner then announced his desire to go to the bathroom. The officers agreed, but one of them accompanied petitioner to be sure that the area was secure. Upon entering the bathroom, the detective saw a piece of manila envelope, similar to the pay envelope described by complainant, clinging to the side of the bowl. This was confiscated by the detective. Petitioner and his companion were then taken to the police station.

Based on the foregoing, the trial judge found that

> "[f]acts establishing probable cause herein were: The report of the robbery allegedly committed by a black female at No. 75 Townsend Street, which the police officers knew to be the home of the defendant; that the victim had been solicited for a sex offense; that the description of the female's clothing was identical with that which Detective Maloney had seen the defendant wearing only two hours earlier that evening; that the defendant, on other occasions, had been arrested by the officers for solicitation in the very area where the victim was 'picked up'; and that all the detectives individually, and collectively, concurred in the view that the 'modus operandi' was that of the defendant, who were well versed in the behavior and conduct of the defendant as a male transvestite." Memorandum Opinion of Rubin, *J.,* March 27, 1974, at 9.

This Court finds no fault with the reasoning of the trial court or with the conclusion that there was probable cause to arrest petitioner.

In determining whether there was probable cause to make the arrest, the Court "start[s] from the premise that '[t]he rule of probable cause is a practical, nontechnical conception affording the vest compromise that has been found for accommodating . . . often opposing interests.' Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). The test to be applied is whether the facts available to the officers at the moment of the arrest were 'sufficient to warrant a prudent man in believing that the petitioner had committed . . . an offense.' Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)." *United States ex rel. LaBelle v. LaVallee,* 517 F.2d 750, 753 (2d Cir. 1975).

The decision of the trial judge herein comported fully with this requirement.

The trial court next found that the officers had complied with applicable state law when they entered the apartment and placed the petitioner under arrest after

> "(1) advising him through an open window of their authority as police officers; (2) advising him that he was under arrest for a felony charge of robbery committed on the victim Pecora; (3) requesting defendant or his companion to open the door and give them entry; (4) advising defendant of his Miranda rights; and (5) not breaking and entering until they gave defendant a reasonable opportunity to comply." Memorandum Opinion of Rubin, *J.,* March 27, 1974, at 10.

After concluding that the arrest and the entry were proper, the court went on to scrutinize the seizure of the woman's clothing and the pay envelope. The court found in both instances that the officers were validly in the area in question in each instance and that the seizures were justified and proper under the "plain view" doctrine. The court had found the officers' presence in the room for the purpose of making the

584

arrest was proper, and found that it was also proper for one of the officers to accompany petitioner to the bathroom once he was in custody thereby justifying the officer's presence for the purpose of the second seizure.

"It is . . . clear that incriminating evidence inadvertently coming into plain view pursuant to an initial lawful intrusion is subject to seizure." *United States ex rel. LaBelle v. LaVallee, supra,* 517 F.2d at 755. This is the case here, as the trial court correctly concluded in its carefully worded opinion. This Court finds no infirmity which would give rise to a claim for habeas corpus relief. Since the trial court held a full and fair evidentiary hearing, and since the findings of fact were amply supported by the record, there is no requirement that this Court hold an evidentiary hearing, and this Court declines to do so. *United States ex rel. Johnson v. Department of Correctional Services,* 461 F.2d 956, 961 (2d Cir. 1972).

Petitioner's sixth claim is that there was testimony of petitioner's *modus operandi,* when in fact there was no evidence of such. This claim has not been presented to the courts of the state in the first instance and this Court finds that petitioner has failed to exhaust this claim. *Picard v. Connor, supra,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438.

Petitioner's final claim is that the complainant himself was not indicted. Not only has the state remedy with respect to this claim not been exhausted, but this claim is entirely frivolous and deserves no further comment.

Accordingly, petitioner's application is denied and the writ is dismissed.

So ordered.