611 P.2d 932

John Harvey ADAMSON, Petitioner,

v.

The SUPERIOR COURT OF the State of ARIZONA, the Honorable William French, Judge of the Superior Court in and for the County of Maricopa, and Robert Corbin, Attorney General for the State of Arizona, Real Party in Interest: State of Arizona, Respondents.

No. 14898.

Supreme Court of Arizona, En Banc.

May 29, 1980.

Martin & Feldhacker by William H. Feldhacker and Gregory H. Martin, Phoenix, for petitioner.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Asst. Atty. Gen., Phoenix, for respondents.

HAYS, Justice.

On May 13, 1980 the petitioner filed a Petition for Special Action asking for a stay of proceedings against petitioner, an order prohibiting further prosecution and dismissing the case, and any other and further relief the court deems appropriate. At the initial hearing the court refused to enter a stay but set the petition for hearing on May 28, 1980. Prior to the hearing date, petitioner attempted to have the Special Action dismissed but the court denied his motion.

The factual background necessary for an understanding of the issues raised includes the following: On January 15, 1977 petitioner entered a plea of guilty to an open murder charge in CR–93385, alleging the killing of Donald F. Bolles; the guilty plea was pursuant to a plea agreement which was accepted by the Honorable Ben C. Birdsall sitting in Tucson, Arizona; the case had been transferred to Pima County for trial; pursuant to the plea agreement, the open murder charge was amended to second degree murder and a sentence of not less than 48 nor more than 49 years was imposed.

Thereafter, pursuant to the plea agreement, petitioner Adamson testified on behalf of the state in the trial of Max Anderson Dunlap and James Albert Robison for the murder of Donald F. Bolles. Both defendants were found guilty and sentenced to death. On appeal to this court, the convictions of Dunlap and Robison were reversed and remanded for a new trial.·

A letter dated April 3, 1980 was directed to the Attorney General's office by petitioner's attorney. The letter reads as follows:

"Stanley L. Patchell, Esq.
Assistant Attorney General
Arizona State Capitol Building
Phoenix, Arizona 85007

"Re: State of Arizona vs. John Harvey Adamson
Case No. CR–93385

"Dear Stan:

"I am writing to confirm our telephone conversation of April 2, 1980 wherein we discussed the availability of John Adamson for interviews in preparation for his testimony in the trials of the State of Arizona vs. James Robison and Max Dunlap.

"As I advised you by phone, I have met with John Adamson at his place of incareration [sic] along with my law partner, Greg Martin. We had lengthy discussions revolving around his expected testimony as well as the plea agreement that he had entered into with the State of Arizona in the above-referenced case number. Further, at that time I also delivered to Mr. Adamson a complete set of transcripts of his testimony in the trial of James Robison and Max Dunlap that was previously held.

"After lengthy discussions and consideration of all of the various aspects of this case and the potential ramifications to Mr. Adamson, I can advise you of the following matters:

"1. John Harvey Adamson believes that he has fully complied with, and completed, his plea agreement entered into with the State of Arizona. It is, therefore, his position that his future testimony in any case involving the defendants Max Dunlap or James Robison regarding

the killing of Donald Bolles will only be given upon the offer of further consideration by the State of Arizona.

"2. John Harvey Adamson is well aware of the fact that he can be subpoenaed by your office to appear as a witness in any criminal matter; however, he is further aware that the fact that he may be called to the stand does not mean that he must testify. He does understand that he may be directly ordered by the Court to testify and, if he refuses to do so, may be held in contempt by the Court.

"3. John Harvey Adamson is further fully aware of the fact that your office may feel that he has not completed his obligations under the plea agreement in CR–93385 and, further, that your office may attempt to withdraw that plea agreement from him. He is aware that if the State were successful in doing so, that he may be prosecuted for the killing of Donald Bolles on a first degree murder charge.

"4. If the State of Arizona desires to have Mr. Adamson testify in any further proceedings against James Robison or Max Dunlap, it is John Adamson's position that the following conditions must be met:

"a. The State of Arizona will agree that, upon his completion of his testimony, John Harvey Adamson will be released from custody immediately. The testimony referred to herein is, of course, testimony in an additional trial of the State of Arizona vs. Max Dunlap and, possibly, testimony in a separate trial of the State of Arizona vs. James Robison. If separate trials are held, Mr. Adamson's demand for his immediate release will apply to the completion of his testimony in whichever trial goes first. This demand is not to be considered to be contingent upon any verdict being reached in either case.

"b. If the State agrees to the first condition, an additional condition will be that when John Harvey Adamson is transported to Maricopa County for his testimony in the above-referenced trial, that he will not be held in a facility of the Maricopa County Jail or the Maricopa County Sheriff's Department. It is his demand that he be held in a non-jail facility with the agreement that there will be full time, that being 24-hour, protection by some law enforcement agency, preferably the U. S. Marshal's office, for Mr. Adamson's safety.

"c. As a further and separate demand, John Harvey Adamson wishes to have a complete clothing outfit prior to his testimony in any trial consisting of a new suit, new shoes, socks, etc.

"d. Mr. Adamson further demands that if his testimony is going to be requested by the State, his ex-wife Mary and his son be provided with protection until such time as Mr. Adamson is released from custody. Further, Mr. Adamson requests that an educational fund be set up for his son.

"e. Mr. Adamson further demands that, upon his release from custody, he will be provided with suitable transportation and funds in order for him to travel to a location outside of the State of Arizona to set up a new identification and life for himself. It is anticipated that the State will work through the U. S. Attorney's office and the U. S. Marshal's office in an attempt to comply with this demand.

"f. Further, John Harvey Adamson demands that, prior to any further testimony and/or interviews, he be provided with full and complete immunity for any and all crimes in which he may have been involved.

"The above basically describes what Mr. Adamson's demands are for his future testimony in any case involving James Robison or Max Dunlap. As we have discussed many times in the past with Bill Schafer, the crimes for which John Adamson requires immunity in order to fully and completely answer any cross-examination by defense counsel, are not of such a nature that the State would be shocked for the State to extend immunity for those crimes. Further, I can

represent that any immunity involved as far as any homicide case would be concerned would be an immunity from prosecution for any indirect, and unknowing, participation in any homicide.

"By this letter, it is represented to you that John Harvey Adamson has not been directly involved in any actual homicide outside of the Don Bolles killing.

"After you have had an opportunity to review this letter and Mr. Adamson's demands, I would appreciate your contacting me as soon as possible to let me know what your position is. I would also like to advise you that the demands outlined above are basically non-negotiable demands. Therefore, if you find that there is an absolute prohibition against any of the above, we can anticipate that Mr. Adamson will not be testifying in any trials in the future.

"Again, I would like to re-emphasize the point that it is Mr. Adamson's position that he has fully and completely, and in good faith, fulfilled all of his obligations under the plea agreement. The plea agreement was drafted in such a manner that it was anticipated to be concluded prior to Mr. Adamson's sentencing. It is further our position that, without some type of stipulation, a Superior Court Judge will not have any jurisdiction to change, alter, or withdraw Mr. Adamson's plea agreement and/or sentence.

"I look forward to hearing from you in the near future.

> "Very truly yours,
> "MARTIN & FELDHACKER
> s/ William H. Feldhacker
> "William H. Feldhacker

WHF: ir

CC/John Harvey Adamson"

Thereafter, the Attorney General attempted to force petitioner to participate in the preparation of the retrial of defendants Dunlap and Robison. Hearing was held in Superior Court before the Honorable Robert L. Myers with the state urging that petitioner, pursuant to the plea agreement, should be compelled to testify. The state's motion to compel was denied. The Supreme Court declined to accept jurisdiction of a Petition for Special Action brought on this issue by the state.

The state, on May 8, 1980, filed an information in Maricopa County Superior Court under number CR-93385, charging petitioner with the murder of Donald F. Bolles, and a warrant issued. Petitioner's motions to quash the warrant and strike the new information were denied.

The issues raised by this proceeding are:
I. Has petitioner violated the terms of the plea agreement?
II. If the plea agreement has been violated, did the state proceed properly in filing a new information under the old number and ignoring the judgment of conviction entered pursuant to the plea agreement?
III. Is further prosecution of the petitioner barred by the Constitutional prohibitions against double jeopardy?

## ISSUE I

■ The record before us is replete with indications of petitioner's refusal to testify further in the Bolles murder cases. We must examine the agreement itself to determine if such refusal is justified. The following excerpts from the agreement provide the answer to this query:

"4. The defendant hereby agrees to testify fully and completely in any Court, State or Federal, when requested by proper authorities against any and all parties involved in the murder of Don Bolles, . . . .

"5. It is agreed by all parties that the defendant shall testify truthfully and completely at all times, whether under oath or not, to the crimes mentioned in this agreement. This shall include all interviews, depositions, hearings and trials. Should the defendant refuse to testify or should he at any time testify untruthfully or if any material fact in the defendant's transcribed statements given to the State prior to this agreement be false, then this entire agreement is null and void and the original charges will be

automatically reinstated. The defendant will be subject to the charge of Open Murder, and if found guilty of First Degree Murder, to the penalty of death or life imprisonment requiring mandatory twenty-five (25) years actual incarceration, and the State shall be free to file any charges, not yet filed as of the date of this agreement."

We have also read some 35 pages of the change-of-plea hearing wherein the court went through the plea agreement paragraph-by-paragraph, questioning the petitioner as to his understanding of each portion. The court ultimately made the finding that the plea was made voluntarily and intelligently with full understanding and that the defendant was competent to enter the plea.

Although the plea agreement does not specifically spell out the duration of petitioner's obligations, it does contemplate full compliance with the requests of the state until the objectives have been accomplished. This is stated in the broadest of terms. We have no hesitation in holding that the plea agreement contemplates availability of petitioner's testimony whether at trial or retrial after reversal.

At the oral argument for the first time, petitioner disclosed the basis for his contention that he had fully complied with the terms of the plea agreement and no longer had an obligation to testify further. He referred to item number 8 of the plea agreement which reads as follows:

"8. All parties to this agreement hereby waive the time for sentencing and agree that the defendant will be sentenced at the conclusion of his testimony in all of the cases referred to in this agreement and Exhibits A and B, which accompany it."

The state countered in oral argument by reading the following portion of the transcript of the sentencing hearing:

"THE COURT: All right. The Court's sentencing is limited by the terms of the plea agreement which was entered in this case, which was previously accepted by the Court and the Court is going to pro-

ceed with the sentencing in accordance with that plea agreement.

· "Do you have anything, Mr. Schafer?

"MR. SCHAFER: Yes. I would like to add one thing.

"I wish the record would show that it has been discussed with counsel, and I believe counsel has discussed it with Mr. Adamson that it may be necessary in the future to bring Mr. Adamson back after sentencing for further testimony.

"THE COURT: The record may show that.

"MR. FELDHACKER: That's our understanding.

"MR. MARTIN: That's correct."

If item 8 superficially appears to limit the availability of the petitioner for additional testimony, the foregoing exchange at the sentencing hearing amounted to a clear understanding that Adamson would testify after sentencing. Petitioner has violated the terms of the plea agreement.

## ISSUE II

█ The attorney general, by filing a new information, albeit under the old number, unilaterally determined that the assignment to the Honorable Ben Birdsall was at an end and that the previous order transferring the trial of the case to Pima County was no longer viable. We do not agree with this position.

We have examined the two cases cited by the state, *State v. Rice*, 99 Ariz. 14, 405 P.2d 894 (1965), and *State v. Johnson*, 97 Ariz. 27, 396 P.2d 392 (1964). We do not agree that these cases mandate the filing of a new information nor do they change the definition of the word "reinstate" which is used in the plea agreement.

The state urges that filing a second information in the same action where the first may have lost its vitality is not new in Arizona. As a broad general proposition that may be true, but let us examine such a rule in the context of this case. Although we find sufficient evidence in the record to hold that the plea agreement has been violated, we are aware that at times such a

determination might, in another case, require a hearing. *See State v. Warren*, 124 Ariz. 396, 604 P.2d 660 (App.1979). Who is more competent to make such determination after hearing than the judge who accepted the plea? Secondly, the attorney general lacks authority to make a determination that "the reason for sending the case to Pima no longer exists"; this was determined by a court and only a court can set it aside. Orderly judicial process requires that a determination that the plea agreement was violated be made, that the sentence, judgment of conviction and plea of guilty be set aside and that the original information be reinstated pursuant to the plea agreement. Such procedure has not been followed.

### ISSUE III

■ In his Memorandum in support of the Petition for Special Action petitioner asserts that allowing the state to proceed would be in violation of the prohibition against double jeopardy. Citing *Lombrano v. Superior Court*, 124 Ariz. 525, 606 P.2d 15 (1980), he contends that at the time the petitioner was sentenced jeopardy attached. *State v. Burruell*, 98 Ariz. 37, 401 P.2d 733 (1965), is also cited.

We do not disagree with these general propositions of law. The petitioner, however, entered into a plea agreement with the state which by its very terms waives the defense of double jeopardy if the agreement is violated. Obviously a defendant can by agreement waive Constitutional rights. *See* 17 A.R.S. Rules of Crim.Proc., rule 17.2(c). Having determined that the state should proceed with a "reinstated" information pursuant to the plea agreement, we need not consider the double jeopardy implications of proceeding under a new information.

It is ordered that the relief sought by petitioner is denied. It is further ordered that the new information filed in cause number CR-93385 is dismissed, the judgment of conviction and sentence heretofore entered in cause number CR-93385 are vacated and the original information in said cause charging open murder is reinstated. Further ordered that this cause is remanded to the Honorable Ben Birdsall sitting in Pima County for further proceedings in conformity with this opinion.

The mandate shall issue forthwith.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.