**John Harvey ADAMSON, Petitioner-Appellant,**

v.

**James G. RICKETTS, et al., Respondent-Appellee.**

No. 84–2069.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1984.

April 18, 1985.

Timothy K. Ford, Seattle, Wash., Timothy J. Foley, Hancock, Rothert & Bunshoft, San Francisco, Cal., for petitioner-appellant.

William J. Schafer, III, Phoenix, Ariz., for respondent-appellee.

Before WRIGHT, POOLE and WIGGINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In this death penalty appeal we are confronted by these issues: (1) was the error in the admission of certain evidence in the underlying trial a confrontation clause violation and, if so, was it harmful; (2) what is the standard of review in the district court and this court in passing on the sufficiency of the evidence; (3) is the death penalty as applied under Arizona law unconstitutional because it takes the aggravating circumstances question from the jury and places it before the judge; (4) is the Arizona heinous, cruel or depraved aggravating factor constitutionally sound; and (5) is this case controlled by Supreme Court authority and particularly by *Spaziano v. Florida,* —— U.S. ——, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984)?

FACTS

Adamson was arrested in 1976 for the bombing murder of investigative reporter Don Bolles. In 1977, he entered a plea agreement with the state under which he was to testify against two other persons and was permitted to plead guilty to second degree murder. He received a sentence of 48–49 years imprisonment, with actual imprisonment to be 20 years and two months.

The convictions of the other two persons against whom Adamson had testified were overturned. Adamson refused to testify in their retrial unless the state conceded to his list of "non-negotiable" demands, including release from custody.[1] The prosecution refused to negotiate and attempted to force Adamson to abide by the original agreement. *Adamson v. Superior Court,* 125 Ariz. 579, 582, 611 P.2d 932, 935 (1980). When that failed, the state filed a new information. *Id.*

Adamson brought a special action challenging that procedure. The Arizona Supreme Court held that Adamson breached the plea agreement and the first degree murder charges could be reinstated.[2] This

---

1. Petitioner's attorney sent a letter to the Attorney General's office demanding: (1) immediate release from custody after testifying; (2) to be held in a non-jail facility with full-time protection; (3) a complete clothing outfit prior to testifying; (4) protection for his ex-wife and son; (5) an educational fund for his son; (6) transportation and funds to set up a new identity outside Arizona; and (7) full and complete immunity for all crimes in which he may have been involved, stipulating that none were actual murders.

 The letter stated further that Adamson believed he had fully complied with the plea agreement but realized that, if the Attorney General felt he had not complied, the State could attempt to withdraw the plea agreement. If the State were successful, Adamson acknowledged that he would be prosecuted for first degree murder. *Adamson,* 125 Ariz. 579, 580–82, 611 P.2d 932, 933–35 (1980).

2. The Arizona Supreme Court also affirmed the superior court's findings that the plea was voluntarily entered and that compliance meant testifying at any retrial. *Id.* at 582–83, 611 P.2d at 935–36. The court determined that the breach constituted waiver of Adamson's right against

court, in an unpublished memorandum, affirmed the denial of Adamson's habeas petition on the grounds that double jeopardy was not violated and due process did not require an evidentiary hearing.[3]

The evidence at trial established that Bolles, an investigative reporter for the Arizona Republic, was to meet Adamson at a Phoenix hotel to gather information for a news story. Bolles left two notes to his supervisor, Bernie Wynn, identifying Adamson as Bolles' contact and giving the time and the place of the meeting.[4]

While Bolles waited at the hotel, he received a phone call from someone whom he later identified as Adamson, changing the meeting place. Bolles then went to his car and began to back from the parking space en route to the rearranged meeting. At that moment the bomb exploded, projecting pieces of the car throughout the parking lot and into a neighboring construction site. The explosion shook area buildings. Bolles was mortally wounded. He was taken to a hospital and later died.

Further evidence properly admitted at trial linked Adamson to the materials to make the bomb and to the bombing. *See State v. Adamson*, 136 Ariz. 250, 256, 665 P.2d 972, 978, *cert. denied*, —— U.S. ——, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). Statements made by Bolles while in the hospital that he had gone to meet Adamson and that Adamson had phoned him were prop-erly admitted as dying declarations. *Id.* at 254–55, 665 P.2d at 976–77. Bolles was also able to identify a photograph of Adamson.

Adamson was convicted of first degree murder and sentenced to death in 1980. Review of this conviction was denied by the Supreme Court. *State v. Adamson*, —— U.S. ——, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). After exhausting his state remedies,[5] he challenges his conviction and sentence in this habeas corpus petition.

We address the issues concerning the evidence before we turn to those challenging the death penalty statute.

## IMPROPER ADMISSION OF HEARSAY

Don Bolles made several statements immediately after the bombing. To rescuers he said, "You better hurry up, boys, I feel like I'm going." He also said he was investigating "a Mafia called Emprise ..." and "... the Mafia was responsible." Additional statements were: "Adamson did it ..." and "Adamson [set or sent] me." *Adamson*, 136 Ariz. at 255, 665 P.2d at 977. The trial court admitted all statements as both dying declarations and excited utterances.

Adamson raises three challenges to the introduction of these hearsay statements: (1) the proper harmless error standard, (2) the standard of review of the state and

---

double jeopardy and justified reprosecution. *Id.* at 583, 611 P.2d at 937.

Adamson continued to refuse to cooperate until after the Arizona Supreme Court's opinion.

**3.** *Adamson v. Hill*, 667 F.2d 1030 (9th Cir.1981). The court found Adamson had been given a full and fair hearing on these claims. The Arizona Supreme Court heard oral argument and examined Adamson's pleadings and a record including the plea agreement, the written refusal to testify, and a transcript of the proceedings at Adamson's original sentencing.

Double jeopardy was satisfied because the Arizona Supreme Court's interpretation of the plea agreement was "eminently reasonable." The agreement's deferred sentencing provision also supported this conclusion.

The court rejected Adamson's belated attempts to force the state to allow him to "cure"

his breach. That result would reduce the state and federal decisions in the case to advisory opinions and the already concluded trial would become meaningless.

**4.** Adamson originally challenged the introduction of the notes and all of the victim's later statements. The Arizona Supreme Court ruled that authorship of the first note and the authenticity of the second note were established through Wynn's testimony. *State v. Adamson*, 136 Ariz. 250, 256, 665 P.2d 972, 978–79, *cert. denied*, —— U.S.——, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983).

**5.** *See* 28 U.S.C. § 2254(b). Petitioner's claims were either addressed by the Arizona Supreme Court or raised in a petition for post-conviction relief which was finally dismissed by the Arizona Supreme Court on February 22, 1984.

district court's harmless error determinations, and (3) the correctness of their conclusions.

The Arizona Supreme Court held that Bolles' statements concerning the Mafia and that "Adamson did it" were inadmissible because Bolles had insufficient personal knowledge of the facts. *Adamson*, 136 Ariz. at 255, 665 P.2d at 977. The statement "Adamson [set or sent] me" was properly admitted.

■ Under our limited habeas corpus review, we must first decide whether this evidentiary error violated the Confrontation Clause. *See Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984). Hearsay rules and the Confrontation Clause are not coextensive. *Dutton v. Evans*, 400 U.S. 74, 86–87, 91 S.Ct. 210, 218–219, 27 L.Ed.2d 213 (1970). Instead, we apply a two-part analysis to Confrontation Clause questions: declarant unavailability and reliability. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *United States v. Tille*, 729 F.2d 615, 621 (9th Cir.1984).

■ The finding that Bolles lacked personal knowledge establishes that there is insufficient indicia of reliability. *See Dutton v. Evans*, 400 U.S. at 88–89, 91 S.Ct. at 219–220 (second indicium is personal knowledge). The harmless error standard applies to this Sixth Amendment violation.[6] *See Harrington v. California*, 395 U.S. 250, 252–54, 89 S.Ct. 1726, 1727–29, 23 L.Ed.2d 284 (1969).

### 1. *The Harmless Error Standard*

■ Using the test that error does not require reversal if, beyond a reasonable doubt, the evidence had no influence on the

verdict or the jury would have found defendant guilty, the Arizona Supreme Court determined this error to be harmless. *Adamson*, 136 Ariz. at 255–56, 665 P.2d at 977–78. The petitioner challenges this formulation of the harmless error standard, contending that the proper test is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," citing *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).

The Supreme Court has recently restated the *Chapman* test for harmless constitutional error. "The question a reviewing court must ask is this: absent the ... [error], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" *United States v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983). The Arizona Supreme Court and the district court properly formulated the harmless error standard.

### 2. *Review of the State and District Courts' Findings*

■ Petitioner questions whether or not this court must presume the correctness of the Arizona Court's finding of harmless error. Section 2254(d) requires the federal courts to presume the correctness of state court factual findings. 28 U.S.C.A. § 2254(d).[7] This presumption applies to state appellate court findings. *Sumner v. Mata*, 449 U.S. 539, 545–46, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981).

■ The presumption of correctness in section 2254 does not apply to mixed questions of law and fact. *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71

---

**6.** Despite Justice Cardozo's powerful language in *Shepard v. United States*, 290 U.S. 96, 104, 54 S.Ct. 22, 25, 78 L.Ed. 196 (1933), improperly admitted dying declarations are not always prejudicial. The Supreme Court has since evolved the harmless error rule. *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). The Ninth Circuit has reviewed improperly admitted dying declarations under that standard. *E.g., United States v. Martinez,*

536 F.2d 886, 889 (9th Cir.), *cert. denied,* 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976).

**7.** Petitioner also asserts that he is challenging the sufficiency of the evidence and section 2254(d) does not apply. *See Jackson v. Virginia*, 443 U.S. 307, 320–24, 99 S.Ct. 2781, 2789–92, 61 L.Ed.2d 560 (1979). While there was an initial dispute over whether petitioner was challenging the sufficiency of the evidence, it was resolved in Adamson's favor.

L.Ed.2d 480 (1982); *Fendler v. Goldsmith,* 728 F.2d 1181, 1190–91 n. 21 (9th Cir.1984). Whether the admitted constitutional error was harmless is a mixed question,[8] which we review *de novo.* *Proffitt v. Wainwright,* 685 F.2d 1227, 1259 n. 48 (11th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983). *See Fendler v. Goldsmith,* 728 F.2d at 1190 & n. 20.

■ Petitioner contends that the district court's review was insufficient because it only reviewed the record for evidence supporting the guilty verdict. The court explicitly reviewed the whole record and made detailed findings of fact.[9] We review the supplemental facts under a clearly erroneous standard. *Proffitt v. Wainwright,* 685 F.2d at 1259 n. 48; *Whitehead v. Wainwright,* 609 F.2d 223, 224 (5th Cir. 1980). They are overwhelmingly supported in the record.

### 3. *The Error Was Harmless*

■ Adamson argues that some excluded evidence shows that the statements were not harmless. He attempted to question the jury foreman. The trial court was correct in excluding that evidence because the jury's deliberative process may not be inquired into. Fed.R.Evid. 606(b); *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 457 n. 5, 78 L.Ed.2d 267 (1983); 17 Ariz.Rev.Stat. 24.1(d).

■ Adamson also introduced a newspaper clipping purporting to establish the hearsay statements' harmful effect on the jury. The district court found the statements attributable to the juror did not indicate the improperly admitted evidence contributed to the conviction and the story was not probative evidence. We agree with that conclusion.[10]

Adamson argues that the evidence against him is circumstantial and controverted. He challenges the credibility of a government witness, Lettiere. He argues further that the testimony of his alibi witness and the newspaper lot guard show the weakness of the evidence used to convict him. Because he called a witness to testify that he had a valid reason for his flight, he objects to any inference of guilt from evidence that he left Phoenix the night of the bombing.

■ We will not reassess witness credibility on a habeas corpus appeal. *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983). The jury and the Arizona Supreme Court necessarily credited Lettiere's testimony. *See Adamson,* 136 Ariz. at 258, 665 P.2d at 978.

The alibi witness was unable to state unequivocally when he was with Adamson and he was impeached by three previous felonies. Although without specific findings on credibility, the jury and the Arizona Supreme Court apparently found O'Grady's testimony not credible. *See Marshall,* 103

---

**8.** The distinction between a question of fact and a mixed question of law and fact is not always clear. *Wainwright v. Witt,* —— U.S. ——, ——, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985); *Fendler v. Goldsmith,* 728 F.2d at 1194 (Alarcon, J., dissenting). The Supreme Court's recent opinion in *Witt* does not change our conclusion that this is a mixed question. In *Witt,* the Court determined that excluding capital sentencing jurors for opposition to capital punishment is no different than excluding jurors for bias. *Wainwright v. Witt,* —— U.S. at ——, 105 S.Ct. at 855. *Patton v. Yount,* —— U.S. ——, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), then controls. *Patton* held that juror bias is essentially a question of fact. 104 S.Ct. at 2891–93. The judge's predominant task is assessing juror credibility and, like witness credibility, this is subject to a § 2254(d) presumption of correctness.

**9.** The supplemental order is attached to this opinion. It contains a recitation of facts contained in the Arizona Supreme Court's opinion as well as supplemental facts found by the district court.

**10.** Regardless, the story is inadmissible as evidence of a matter as to which the juror is precluded from testifying. *See* Fed.R.Evid. 606(b). A commentator has suggested that evidentiary rules should be relaxed in a death penalty sentencing proceeding to enable a defendant to produce all relevant mitigating information. Kaplan, *Evidence in Capital Cases,* 11 Fla.St.U.L.Rev. 369, 372, 386 (1983–84). The reasons stated to support that conclusion are inapplicable here. Adamson wishes to impeach the jury's verdict, not the judge's sentence, with this evidence.

S.Ct. at 850. This determination will not be disturbed and negates any favorable inferences drawn from it. *Id.* 103 S.Ct. at 851.

██ Finally, Adamson points to the length of the deliberations as indicative that the error was not harmless. We do not draw that inference from deliberations of a day and a half when the question for the jury was guilt of first degree murder.

██ The district judge reviewed 11 submitted pleadings and three sets of exhibits and listened to oral argument before affirming the state court's conclusion that this error was harmless. He then reviewed all trial transcripts and independently assessed that the error was harmless. Based on our independent review of the record, we agree that it was harmless.[11]

## THE DEATH PENALTY

### 1. *Arbitrary and Capricious*

Adamson's claim of arbitrary application of the death penalty rests on the fact that he is now sentenced to death for a crime for which he had already been sentenced to prison, by the same judge and on the same facts and aggravating and mitigating circumstances. He contends that he is now ready to testify under the original plea agreement or even on harsher terms. The only fact that changed in the interim was his breach of the plea agreement and that is an insufficient basis for the increased sentence.

██ Adamson seeks to invoke the principle, recognized in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), that upon resentencing following a new trial, if a defendant receives a harsher sentence than that administered after his first trial, the sentencing court cannot act vindictively by imposing an additional punishment for the defendant having availed himself of his procedural remedies. To guard against improper vindictiveness, the resentencing court must state on the record "objective information

concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" which justifies a harsher sentence. *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081.

██ In cases involving rejected or withdrawn plea bargains where a defendant receives a harsher sentence than that tendered to him, the procedural safeguards of *Pearce* have been found to have no application. *Hitchcock v. Wainwright*, 745 F.2d 1332, 1338–40 (11th Cir.1984); *Frank v. Blackburn*, 646 F.2d 873, 885 (5th Cir. 1980). *But see United States v. Lippert*, 740 F.2d 457, 460 (6th Cir.1984) (Refusing to apply a per se rule that *Pearce* does not apply to post-plea-bargaining proceedings, the court looked for evidence of judicial vindictiveness.). Nor is reindictment to add an additional offense following failed plea bargaining negotiations improper punishment for rejecting the plea. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

██ These cases have a common thread. Where a defendant makes a voluntary choice to reject or withdraw from a plea bargain, is convicted of the crimes alleged against him, and receives an otherwise lawful sentence for those crimes, he has no cause to complain that the sentence received is harsher than that originally tendered. In such a case, the defendant has acquired no right to a sentence which he has voluntarily rejected and assumes the risk of a lawfully authorized harsher sentence. The plea bargaining process has been sanctioned by the Supreme Court, *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and by the Congress in approving Rule 11(e) of the Federal Rules of Criminal Procedure.

Accordingly, the admitted pressure imposed upon one faced with unpleasant choices in making a plea bargain agreement is not impermissible. *See Hayes*, 434 U.S. at 364, 98 S.Ct. at 668. There is no

---

**11.** We are not required in all cases alleging constitutional error to review the entire record. *Hastings*, 103 S.Ct. at 1980–81. We think it is warranted in this case. It is, of course, required when petitioner challenges the sufficiency of the evidence.

basis in such cases to apply the procedural safeguards of *Pearce* because there is no retrial of the same case and no imposition of a harsher sentence based upon the same facts.

 The instant case involves an agreement to plead guilty and receive a specific sentence for the crime of second degree murder. There was no trial for that crime. Sentence was imposed pursuant to the agreement. When Adamson failed to perform in accordance with the agreement, he knew that vacating the negotiated sentence and reinstating the open murder charge was a potential consequence. He accepted that risk.

Adamson made a choice which was within his power to make but, unlike *Pearce*, he was exercising no right which the law accords. Under these circumstances, we hold that the procedural safeguards of *Pearce* have no application. *Ehl v. Estelle*, 656 F.2d 166 (5th Cir.1981), *cert. denied*, 455 U.S. 953, 102 S.Ct. 1459, 71 L.Ed.2d 669 (1982). There was but one trial and one sentence for the crime of first degree murder.

 We acknowledge the principle that sentencing may not be based upon extraneous factors. The record before us, however, is devoid of any evidence that the imposition of the sentence of death was other than for the crime of first degree murder, the circumstances under which it was committed, the suffering of the victim, and the complete absence of mitigating circumstances. It was not imposed as an act of vindictiveness by the sentencing judge because Adamson had breached his plea bargain agreement.

 This result does not change because trial was held before the same judge who accepted the original guilty plea. Retrial by the same judge does not violate due process. *Withrow v. Larkin*, 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712 (1975); *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir.1983). There is no reason that trial after a negotiated plea should be presumed so. Petitioner does not allege

and the record does not show that the trial judge harbored any personal bias.

 Nor does the result change because the sentence is death. *See Hitchcock*, 745 F.2d at 1339. Under *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977), the decision to impose the death sentence must "be, and appear to be, based on reason ...." We require that, if the court participates in the plea bargaining, "the record must affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment ...." *United States v. Stockwell*, 472 F.2d 1186, 1187–88 (9th Cir.), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973).

 Adamson argues also that the state abused its discretion and acted vindictively by refusing to negotiate or abide by the former plea agreement. Courts will engage in limited review of prosecutorial discretion. *See, e.g., Bordenkircher*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604; *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *see also* 2 K. Davis, *Administrative Law*, § 9.6 (2d ed. 1979). First, the state has no duty to negotiate a plea agreement. *See* Fed.R.Crim.P. 11(e); *United States v. North*, 746 F.2d 627, 632 (9th Cir.1984) (government may reindict under more serious charges for noncooperation in plea bargaining). Second, petitioner has alleged no facts to support his vague allegation of prosecutorial bad faith.

Finally, Adamson makes an Eighth Amendment argument that the death penalty is excessive for "momentarily balking" on his plea agreement. He is mistaken. His penalty stems from the bombing death of Don Bolles.

### 2. *Right to a Hearing*

 Petitioner argues that he is entitled to an evidentiary hearing on whether his death sentence is arbitrary and capricious. The federal court in habeas corpus must hold an evidentiary hearing only

when the facts underlying the constitutional claim are in dispute. *Harris v. Pulley,* 692 F.2d 1189, 1197 (9th Cir.1982), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Petitioner must demonstrate "that (1) he has alleged facts which, if proved, would entitle him to relief, and (2) an evidentiary hearing is required to establish the truth of his allegations." *Id.*

Any factual issues in dispute here were already decided in the first habeas petition. Adamson attempts to recharacterize this issue but it is in essence what was decided before. Res judicata is not an absolute bar in habeas corpus petitions. *Zavala v. Craven,* 433 F.2d 335, 336 (9th Cir.1970). However, no facts have been alleged that would justify redeciding the right to a hearing.

### 3. *Sentencing Factors*

The state judge found two aggravating factors exist to justify imposing the death penalty: the murder was committed in an especially cruel, heinous and depraved manner and with a motive of pecuniary gain. Adamson argues that these aggravating factors are elements of the offense. Because they were found by the judge, Adamson argues he was denied a right to a jury trial in violation of the Sixth Amendment.

This argument is precluded by *Spaziano v. Florida,* —— U.S. ——, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Spaziano challenged the trial judge's imposition of the death penalty after a jury recommended life imprisonment. The Supreme Court affirmed, noting that the Sixth Amendment does not require jury sentencing. *Id.* 104 S.Ct. at 3162. That *Spaziano*'s holding rested on the Eighth Amendment, *id.* 104 S.Ct. at 3165, does not prevent its application.

Adamson attempts to distinguish *Spaziano* by arguing that the Court addressed only the process of weighing aggravating and mitigating circumstances. A careful reading of *Spaziano* reveals that the judge, not the jury, determined the existence of the aggravating and mitigating fac-

tors. *Id.* 104 S.Ct. at 3158. *See also, Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 3422–23, 77 L.Ed.2d 1134 (1983) (findings made by trial judge); *Trimble v. State,* 300 Md. 387, 396, 478 A.2d 1143, 1154 (1984).

The presumption of correctness in section 2254(d) applies to the facts underlying capital sentencing decisions. In *Barclay,* the Supreme Court limited review of the findings of aggravating circumstances to whether they were "so unprincipled or arbitrary as to somehow violate the United States Constitution." 103 S.Ct. at 3423. "It is not our function to decide whether we agree with … the trial judge …." *Spaziano,* 104 S.Ct. at 3166. We will not apply a more stringent standard in habeas corpus review. *See Jackson v. Virginia,* 443 U.S. 307, 320–24, 99 S.Ct. 2781, 2789–92, 61 L.Ed.2d 560 (1979) (limited evidentiary review in habeas corpus).

Adamson next challenges the sufficiency of the underlying evidence. Under this exception, we assess the factual basis for the findings. *See* 28 U.S.C. §§ 2254(d)(8), (e); *Jackson v. Virginia,* 443 U.S. at 320–24, 99 S.Ct. at 2789–92.

This murder was especially cruel. Don Bolles' agonies were vividly described by the Arizona Supreme Court. *See Adamson,* 136 Ariz. at 266, 665 P.2d at 988. Adamson could reasonably have foreseen a substantial likelihood that Bolles would suffer. Each fact is adequately supported in the record.

Adamson committed this murder for pecuniary gain. The evidence established that he was to be paid $10,000 for the "job" of killing Don Bolles. *See Adamson,* 136 Ariz. at 266, 665 P.2d at 988; Supplemental Findings of Fact No. 5, 11–13.

### 4. *Heinous, Cruel or Depraved*

Petitioner challenges the heinous, cruel or depraved aggravating factor as vague and capricious. We review this question de novo. *See Godfrey v. Georgia,*

446 U.S. 420, 427–33, 100 S.Ct. 1759, 1764–67, 64 L.Ed.2d 398 (1980).

Judicial explication of a statute which provides sufficient clarity to give fair notice obviates a vagueness challenge. *United States v. Bohonus*, 628 F.2d 1167, 1174 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980). The Arizona Supreme Court has gone to great lengths to precisely define and correctly apply Ariz.Rev.Stat. § 13–703(F)(6). *See State v. Gretzler*, 135 Ariz. 42, 50–53, 659 P.2d 1, 9–12, *cert. denied*, —— U.S. ——, 104 S.Ct. 32, 77 L.Ed.2d 1452 (1983), and cases cited therein; *State v. Watson*, 120 Ariz. 441, 447–48, 586 P.2d 1253, 1259–60, *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1978) and cases cited therein. *See also* Note, The Aggravating Circumstances of Arizona's Death Penalty Statute: A Review, 26 Ariz.L.Rev. 661, 674–79 (1984).

 Petitioner claims also that this factor requires an intent on his part to have inflicted pain or cruelty. To the extent that this is a challenge to the statute and not the factual basis for the finding, it is reviewable de novo. *See Proffitt v. Wainwright*, 685 F.2d at 1261 n. 51.

The Arizona Court has answered this objection negatively. *Gretzler*, 135 Ariz. at 51–52, 659 P.2d at 10–11. Cruelty involves the pain and distress visited upon the victim. *Id.* at 51, 659 P.2d at 10. It is sufficient that Adamson could reasonably foresee that there was a substantial likelihood that Bolles would suffer. *Adamson*, 136 Ariz. at 266, 665 P.2d at 988. The statute is disjunctive so this factor alone is sufficient. *Gretzler*, 135 Ariz. at 51, 659 P.2d at 10.

### 5. *Mandatory Death Sentence*

 Arizona's death penalty statute requires the death penalty when one or more statutory aggravating circumstances are found and no mitigation exists. Ariz.Rev. Stat. § 13–703(E); *State v. Jordan*, 137 Ariz. 504, 508, 672 P.2d 169, 173 (1983).

Adamson argues that the Arizona statute is unconstitutional because it mandates the death sentence on finding statutory aggravating factors and no mitigation. The argument continues that this in turn prevents the sentencer from considering all relevant mitigating evidence.

It fails for three reasons. First, the Supreme Court has overturned statutes which make the death penalty mandatory on conviction of a specific crime, such as first degree murder. *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). The Arizona statute requires it only upon finding aggravating circumstances after conviction.

Aggravating circumstances, even statutorily imposed, are unique to a given crime, rather than applicable to the class of crimes. They are procedural standards that ensure against arbitrary imposition of the death penalty and categorically narrow the class of offenders eligible for that sentence at the definitional stage. *See Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 2743–44, 77 L.Ed.2d 235 (1983); *Green v. Zant*, 738 F.2d 1529, 1541 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984).[12]

*Woodson* requires the sentencer to consider the character and record of the offender and the circumstances of the specific offense. 428 U.S. at 304, 96 S.Ct. at 2991. *Roberts* requires that the sentencer have standards for selecting the offenders who receive the death penalty. 428 U.S. at 335, 96 S.Ct. at 3007. The Arizona sentencing procedure meets these requirements.

 Second, "there is [no] one right way for a State to set up its capital-sen-

---

**12.** The Supreme Court recently addressed the Arizona death penalty statute in the context of double jeopardy. *Arizona v. Rumsey*, —— U.S. ——, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). Without discussing whether the provision was unconstitutionally mandatory, the Court recognized that "death must be imposed if there is one aggravating circumstance and no mitigating circumstance sufficiently substantial to call for leniency." *Id.* 104 S.Ct. at 2310.

tencing scheme." *Spaziano*, 104 S.Ct. at 3165. In reviewing a capital punishment statute, our chief concern is that all mitigating evidence be considered and weighed. *Lockett v. Ohio*, 438 U.S. 586, 601, 98 S.Ct. 2954, 2963, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 112–15, 102 S.Ct. 869, 875–77, 71 L.Ed.2d 1 (1982). The Arizona statute in no way limits the mitigating factors to be considered. *Knapp v. Cardwell*, 667 F.2d 1253, 1259 (9th Cir.), *cert. denied*, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982).

Finally, petitioner argues that the mandatory sentencing provision here is comparable to the Alabama provision found to be facially unconstitutional in *Ritter v. Smith*, 726 F.2d 1505, 1519 (11th Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984).[13] In that case, however, the statute required the jury to impose death if it found the defendant guilty of a capital crime. Ala.Code § 13–11–2(a) (1975) (repealed 1981). The judge was then required to weigh the jury's mandatory death sentence recommendation as a factor in deciding whether to impose a death sentence. *Ritter v. Smith*, 726 F.2d at 1516.

The Arizona statute provides "for individualized determination and appellate review at the selection stage." *Zant v. Stephens*, 103 S.Ct. at 2744. The trial court considered all mitigating factors in Adamson's favor. The Arizona Supreme Court conducted an independent proportionality review. *Adamson*, 136 Ariz. at 267, 665 P.2d at 988–89.

CONCLUSION

The Arizona courts and the district court carefully considered Adamson's challenge of error. We independently assessed the evidence. The unanimous conclusion: any error is harmless.

Arizona has carefully drafted a death penalty statute which categorically narrows the eligible class of offenders and provides for individualized determination and appellate review. *See Zant v. Stephens*, 103 S.Ct. at 2743–44. Adamson's challenges to this statute fail.

We affirm the dismissal of the petition.

**APPENDIX**

EXCERPT FROM DISTRICT COURT
ORDER OF MAY 7, 1984

SUPPLEMENTAL FINDINGS OF FACT

This Court has reviewed the entire transcript of Petitioner's trial, and agrees with the Arizona Supreme Court that, absent the erroneous admission of some of the victim's statements, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty. *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983); *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1968).

The evidence recounted by the Arizona Supreme Court in *State v. Adamson*, 136 Ariz. at 256, 665 P.2d at 978, was properly admitted for jury consideration and is confirmed by the trial transcript; other evidence not recited by that court also implicates Petitioner and supports the conclusion that the error was harmless. This Court's review of the transcript reveals that testimony was presented which supports the findings that:

(1) Petitioner purchased a radio control device at a hobby shop in San Diego, California in April of 1976, which had been altered in a rather unique way such that it was rechargeable, and which was of the

---

**13.** The Arizona statute is similar to those of Idaho and Montana. They provide for mandatory death penalties when one or more aggravating and no mitigating circumstances exist. Idaho Code § 19–2515(c); Mont.Code Ann. § 46–18–305. Both state supreme courts have found the aggravating-mitigating scheme constitutional. *State v. Creech*, 105 Idaho 362, 670 P.2d 463, 470–71 (1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984); *Fitzpatrick v. State*, 638 P.2d 1002, 1013 (Mont.1981). Neither case directly addressed the mandatory imposition of the death penalty after all the mitigating factors were considered. However, both cases agree that the crucial issue is the opportunity to present mitigating evidence and to have it considered.

same type as that used in the Bolles killing approximately one month later.

(2) A book entitled *The Anarchist's Cook Book*, and several items similar but not identical to those used in the actual explosive device, including two spools of wire, two red magnets, a battery, and black electricians' tape, were found in Petitioner's apartment on June 5, 1976.

(3) Petitioner actively sought an introduction and meeting with the victim.

(4) Petitioner went to the Arizona Republic parking lot and asked the attendant where "Don So-and-so's" car was; he also went to a Datsun dealership and inspected the underside of a car similar to the one owned by the victim.

(5) In May of 1976, Petitioner stated that he was "going to blow up a car ... this guy was giving people a lot of hard times and stepping on people's toes", and that he was being paid $10,000 for that particular job.

(6) Petitioner had met with the victim a few days before the bombing, such that Bolles was able to identify Petitioner's photograph, and would have had an opportunity to become familiar with Petitioner's voice.

(7) On the day before the bombing, Petitioner was a party to a conversation in which there was mention of "a definite radius that you can keep control of this", and in which Petitioner was asked questions to the effect of "Can you really pinpoint this down? Do you have definite control?"

(8) The victim went to the Clarendon Hotel on June 2, 1976, for the purpose of meeting with Petitioner.

(9) Petitioner telephoned the victim at the Clarendon Hotel a few minutes prior to the bombing.

(10) In the early afternoon on the day of the bombing, Petitioner called witness Gail Owens and told her "something had happened" and that he wouldn't be seeing her for awhile.

(11) In the early evening of the day of the bombing, Petitioner told witness Landry that Landry "might be requested to pick up either six or $7,000".

(12) On the day after the bombing, Petitioner asked witness Lettiere: "You didn't believe I could do something like that, did you?" Petitioner stated to Lettiere that if he ever bought a car "he would have to get a Datsun because it sure as hell took a jolt, or something to that effect". Petitioner told Lettiere he was worried "that he didn't do the job right," and that "he could be in the same boat that Don Bolles was in because he had botched the job." But then Petitioner stated that "my people would take care of court costs and everything, and he had some money coming in in the next day or so".

(13) During the days immediately following the bombing, Petitioner inquired on at least four occasions as to whether a package had been left for him at an attorney's office.

The strength of the above evidence convinces this Court that the trial court's error was harmless. (citation omitted).

Petitioner complains that the Arizona Supreme Court did not consider any defense evidence in reaching its conclusion that the trial court's error was harmless. The defense presented at Petitioner's trial consisted largely of attempts to (1) impeach witnesses Lettiere and Landry; and (2) establish an alibi for petitioner at the time of the bombing. The fact that the state high court did not recite any defense evidence does not mean such evidence was not considered. On the contrary, that court explicitly stated that it reviewed the entire record, 136 Ariz. at 267, 665 P.2d at 989.

The weight and credibility to be given to testimony of impeached witnesses is, of course, a matter for the jury. A federal habeas reviewing court simply has no role in evaluating the credibility of witnesses. *United States ex rel. Young v. Superintendent, Greenhaven Correctional Facility,* 416 F.Supp. 580 (S.D.N.Y.1976); *United States ex rel. Cole v. LaVallee,* 376 F.Supp. 6 (S.D.N.Y.1974); *United States ex*

454

*rel. Bracey v. Petrelli,* 356 F.Supp. 699 (N.D.Ill.1973).

As for the alibi theory, the alibi witness himself admitted that his estimates of the exact times he was with Petitioner on the day of the bombing could be off by as much as one-half hour. Since a critical factor in any alibi is the time sequence, the jury could easily have disregarded this testimony.

In conclusion, on a review of the entire trial transcript, this Court finds that in view of the evidence presented by both the State and Petitioner, the Arizona Supreme Court was correct in its conclusion that the admission of some of the victim's statements was harmless error. In the absence of those statements, it is clear beyond a reasonable doubt that the jury would have found Petitioner guilty.