660 So.2d 966 (1995)
Floyd Lee PATTERSON
v.
STATE of Mississippi.
No. 92-KA-00746-SCT.
Supreme Court of Mississippi.
August 3, 1995.
Rehearing Denied September 21, 1995.
*967 Paul R. Scott, Smith Phillips Mitchell Scott & Rutherford, Hernando, MS, for appellant.
Michael C. Moore, Atty. Gen., Jackson; Charlene R. Pierce, Jeffrey A. Klingfuss, Sp. Asst. Attys. Gen., Jackson, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
BANKS, Justice, for the court:
In this case we consider whether a defendant can be sentenced to life imprisonment without parole under Section 97-3-21 of Mississippi Code Annotated (1972) pursuant to a plea bargain agreement, when the statute does not provide such a penalty. We find that such a sentence is prohibited, and thus, reverse and remand the case for further proceedings.

I.
On May 25, 1989, Floyd Patterson (Patterson) was indicted for the kidnaping and capital murder of one Sherry Taylor under Section 97-3-19(2)(e) of Mississippi Code Annotated (1972). The indictment did not charge Patterson as a habitual offender. Patterson thereafter petitioned the trial court to accept a plea of guilty on the capital murder charge. On December 11, 1989, in conjunction with the guilty plea, Patterson entered a plea contract and agreement with the State. Under the contract, Patterson agreed to be sentenced to life imprisonment without the possibility of parole in order to avoid the possibility of a death penalty. Patterson also agreed not to institute any proceedings to set aside, vacate, or modify his sentence. During the hearing on the petition, the court inquired into whether Patterson understood that he was giving up the right to be released on parole, to which Patterson answered affirmatively. Patterson was subsequently sentenced to life imprisonment in the Mississippi Department of Corrections without parole.
On December 12, 1990, Patterson filed a petition with the trial court to clarify his sentence, alleging that he was told that he was to receive life with parole for his guilty plea. Patterson subsequently pursued post-conviction relief under Section 99-39-1 of Mississippi Code Annotated (1972) by filing a February 5, 1991, motion to correct his sentence. In this motion he alleged that his sentence was illegal in that he could not be sentenced to life without parole unless he was indicted and convicted as a habitual offender. After an evidentiary hearing on these issues, the trial court held that Patterson was repeatedly advised by trial counsel and the court that upon the acceptance of his guilty plea, he would be sentenced to life without parole. With respect to the illegality of the sentence issued, the court reasoned that Patterson waived and forfeited his right to parole in the contract, and that the contract was binding and not contrary to public policy. For the purpose of clarity, the court entered an amended sentencing order indicating that Patterson was sentenced to life imprisonment without parole, and that he had waived his statutory right to be considered for parole or early release.
Aggrieved, Patterson filed a notice of appeal on July 8, 1992.

II.
Patterson contends that under Section 97-3-21 of Mississippi Code Annotated (1972), one found guilty of capital murder may be punished by death or life imprisonment; however, no provision is made for the imposition of life imprisonment without the possibility of parole. Because the statute does not provide for a life sentence without the possibility of parole, Patterson contends that the court neither had jurisdiction nor authority to issue such a sentence.
*968 The State initially argues that as Patterson is not eligible for parole for at least another six years, there is no present controversy. Because there is no actual controversy, the State contends that this Court lacks jurisdiction over the case. Insured Savings and Loan Association v. State, 242 Miss. 547, 135 So.2d 703, 708 (1961) (this court can not entertain an appeal where there is no actual controversy).[1]
Aside from the jurisdiction issue, the State contends that Patterson's waiver of his right to parole was knowing, voluntary, and intelligent, thus, it should be binding against him. Schmitt v. State, 560 So.2d 148 (Miss. 1990) (the voluntariness of a guilty plea is determined by a preponderance of the evidence). As evinced during the evidentiary hearing, the State asserts that Patterson was informed of the waiver and understood its ramifications.
The State further asserts that parole is not a right, but is a matter of sound discretion exercised by the State. Davis v. State, 429 So.2d 262 (Miss. 1983); Moore v. Ruth, 556 So.2d 1059, 1061 (Miss. 1990). If an accused may waive fundamental rights bestowed by the constitution such as the right to a speedy trial and the privilege against self incrimination, asserts the State, surely he may waive his hope to obtain future parole.
In the event that Patterson's waiver is deemed void, the State requests that the case be remanded so that it will have the option of seeking the death penalty. State v. Danley, 573 So.2d 691, 695 (Miss. 1990) (defendant's breach of plea bargain means the bargain is "terminated as if it never existed and the State of Mississippi retains all power of prosecution ..." Id. at 695).
In the present case, prior to its revision effective July 1, 1994, Section 97-3-21 provided penalties of death or life imprisonment in capital murder cases. Lanier v. State, 635 So.2d 813 (Miss. 1994), is controlling as to whether the court was authorized to issue a sentence of life imprisonment without parole, when the statute does not provide for such a penalty.
In Lanier v. State, Johnny Rufus Lanier signed an agreement to be sentenced to life imprisonment without the possibility of parole in exchange for the State's forfeiture of their right to seek the death penalty under Miss.Code Annotated § 99-19-101(1) of Mississippi Code Annotated (1972). After the defendant was questioned by the court as to whether he understood the nature and ramifications of the agreement, the defendant was sentenced to life without parole. We found the contract to be invalid, reasoning:
Enforcement of the contract between Johnny Rufus Lanier and the State would result in a sentence which is not authorized by law. Pursuant to Miss. Code Ann. § 99-19-101(1) (Supp. 1993), the sentencing options available to one convicted of capital murder are life imprisonment or death. Life imprisonment without the possibility of parole is not an option unless the convict is adjudged an habitual offender. Miss. Code Ann. § 99-19-81, 99-19-83 (Supp. 1993). Lanier was not indicted as, and apparently was not, an habitual offender; therefore a life sentence qualified by the preclusion of parole is not available to Lanier.
Lanier, 635 So.2d at 816.
We also found that enforcement of the contract would "yield a result beyond the power of this Court to produce" as the "legislature has established our parole system and the extent of it." Id. The contract was further found to be a violation of public policy as the contract was an attempt to circumvent § 99-19-101, and thus was void ab initio. Id. Because the contract was void, we held that the sentence imposed pursuant to the contract was invalid and void. We further held that because of the contract's invalidity, it could not be amended by deleting the words "without parole" so as to bring the sentence within the parameters of § 99-19-101. Id. at 819. Thus, Lanier once again had the right to be sentenced by a jury, and the State once again had the right to seek the death penalty. Id. at 817.
*969 Pursuant to our holding in Lanier, the contract in the present case  albeit entered into knowingly, voluntarily, and intelligently  was invalid. The provision providing for life without parole was not a permissible option provided by the legislature under § 97-3-21, thus, the court had no authority to issue such a sentence. In addition, the contract was invalid as against public policy as it merely circumvented the dictates of § 97-3-21.
Moreover, as the contract was void, Patterson is not entitled to have his sentence amended by granting him life imprisonment and deleting language denying him parole. Lanier, 635 So.2d at 819. As in Lanier, Patterson has the right to be sentenced by a jury, and the State has the right to seek the death penalty.
For the foregoing reasons, we reverse and remand this case for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by McRAE, J.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
DAN M. LEE, Presiding Justice, dissenting:
On December 11, 1989, Floyd Lee Patterson, faced with the very real possibility that he would be convicted of capital murder and sentenced to death, pled guilty to capital murder. In exchange for Patterson's guilty plea, the State agreed not to seek the death penalty and both parties agreed that Patterson would be sentenced to life imprisonment without the possibility of parole. Evidently, after Mr. Patterson struck his deal with the State and after he arrived at Parchman, he realized that life without parole is not all that it is cracked up to be. Consequently, Patterson began to take the steps necessary to back out of his agreement. Patterson is not satisfied with having escaped possible execution nor is he happy with his life sentence without the possibility of parole. Instead, Patterson wants to be sentenced to life imprisonment with the possibility of parole. Unfortunately, today's majority opinion relieves Patterson of the agreement he knowingly, voluntarily and intelligently entered into and gives him a shot at a life sentence with the possibility of parole. Because I would hold Patterson to his agreement, I respectfully dissent.
Today's majority, as did the plurality in Lanier, suggests that the contract Patterson entered into is void and against public policy. I disagree. In my dissenting opinion in Lanier, I suggested that the contract entered into by Lanier and the State promoted public policy and, therefore, was not void. See Lanier, 635 So.2d at 822 (D. Lee, P.J., dissenting). Clearly, it is the public policy of this State to protect its citizens from capital murderers. Consistent with my dissenting opinion in Lanier, I adopt the analysis and rationale contained therein.
Enforcing agreements where the defendant pleads guilty to capital murder in exchange for a sentence of life imprisonment not only promotes public policy, but also serves to preserve valuable judicial resources and allows the family members of victims a certain degree of closure. Unfortunately, today's majority decision allows for none of the above. Therefore, consistent with my dissenting opinion in Lanier v. State, 635 So.2d 813, 821 (Miss. 1994), I respectfully dissent.
McRAE, J., joins this opinion.
McRAE, Justice, dissenting:
I dissent for the reasons stated in Lanier v. State, 635 So.2d 813, 830-833 (Miss. 1994), and further for the reasons stated in Justice Dan Lee's dissent. Id. at 821-829.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] The State recognized that the issue in the present case was pending before this Court in Lanier v. State, 635 So.2d 813 (Miss. 1994). At the time the briefs were filed, Lanier had not yet been decided. Thus, the State approached the issue as one of first impression.