704 So.2d 1352 (1997)
Charles COURTNEY a/k/a "Bear", Appellant,
v.
STATE of Mississippi, Appellee.
No. 95-KA-01067 COA.
Court of Appeals of Mississippi.
October 7, 1997.
*1353 George F. Hollowell, Jr., Greenville, for appellant.
Michael C. Moore, Attorney General, Deirdre McCrory, Sp. Asst. Attorney General, Jackson, for appellee.
Before THOMAS, P.J., and HERRING and SOUTHWICK, JJ.
HERRING, Judge, for the Court:
¶ 1. This action involves an appeal by the Appellant, Charles Courtney, from a judgment of the Circuit Court of Sunflower County, Mississippi, wherein the trial court denied Courtney's motion to vacate the sentence imposed by the court as a result of his plea of guilty to two charges of the illegal sale of cocaine and one charge of manufacturing cocaine. After a review of the record and the applicable law, we reverse and vacate the judgment and sentence rendered by the trial court and remand this action to the trial court for further proceedings. We further vacate and set aside Courtney's guilty pleas so that both the State and Courtney are placed back in the positions which they occupied prior to Courtney's plea of guilty.

I. THE FACTS
¶ 2. Charles Courtney appeared before the Circuit Court of Sunflower County, Mississippi, on May 12, 1994, and entered guilty pleas to two counts of the sale of cocaine and one count of manufacturing cocaine, all in violation of section 41-29-139 of the Mississippi Code Ann. (Rev. 1993). The indictment also correctly charged Courtney with being a habitual[1] and subsequent offender[2] on all charges. According to the record, Courtney had previously been convicted of one count of the sale of marijuana and one count of the sale of cocaine, both felonies.
*1354 ¶ 3. Judge Howard Q. Davis presided at the hearing on May 12, 1994, when Courtney entered his guilty pleas. At a subsequent hearing on the motion to set aside the sentence received by Courtney which took place over one year later on August 31, 1995, Judge Davis was no longer on the bench and testified as to certain events that took place prior to his accepting Courtney's guilty pleas. According to Judge Davis, David Sullivan of the Delta Drug Task Force, Cleve McDowell, the attorney for the Appellant, and Courtney, himself, came to the judge's office to discuss Courtney's possible guilty plea. It is noteworthy that no prosecuting attorney was present or aware of the meeting, and according to Sullivan, the district attorney would not agree to any plea bargaining negotiations with Courtney. Thus, as stated by Cleve McDowell, an effort was made to "go around" the district attorney by going directly to Judge Davis to discuss a possible plea contract.
¶ 4. Sullivan and McDowell informed Judge Davis in Courtney's presence that he wanted to plead guilty and then have his sentence postponed for one year, while he worked for the Task Force and attempted to assist the narcotics agents as an undercover informant and operative. Sullivan recommended that the court accept the plea of guilty and postpone the sentence in accordance with Courtney's wishes. Judge Davis was agreeable to Sullivan's recommendation and informed Courtney at the meeting that he was facing one hundred eighty years in prison on the pending charges and would probably receive such a sentence unless the judge decided to do otherwise. In essence, Judge Davis informed Courtney that when the time came to sentence Courtney the judge would take into consideration the fact that Courtney worked for the Task Force, although he could make no promises as to what sentence would be imposed upon the Appellant. The judge agreed, however, to reduce Courtney's sentence, "commensurate to what he might do."
¶ 5. At the May 12, 1994, hearing, Courtney was represented by McDowell and was informed by Judge Davis prior to entering his guilty plea, that the court was authorized to impose three consecutive sentences of sixty years each, for a total of one hundred eighty years, without any possibility of parole. Courtney was further informed that he could also be fined in the sum of $6,000,000. The following exchange then took place in open court between the trial judge, Courtney, McDowell, and Gail Bridges, the Assistant District Attorney:
¶ 6. Q. Six million dollars because it doubles? And the Court understands that it has been requested by the Task Force to accept the guilty plea but to withhold sentencing for a year in this cause without any promise as to what that sentence might be. Do you understand that?
A. Yes, Sir.
Q. And that's correct?
A. That's correct.

BY MRS. BRIDGES: Your Honor, I want to state for the record that this is not the recommendation of the State, that this is strictly at the request of the Task Force.

BY THE COURT: All right.
Q. You have discussed this with Mr. McDowell.
A. Yes, sir, we've discussed it.
Q. Are you satisfied with his representation?
A. Yes, sir.
Q. All right.

BY THE COURT: Mr. McDowell you have discussed this with Mr. Courtney?

BY MR. MCDOWELL: I have, Your Honor.

BY THE COURT: Are you satisfied that he understands what he is doing here today?

BY MR. MCDOWELL: Yes, Your Honor.
Q. How old are you, Mr. Courtney?
A. Thirty-eight.
Q. How far did you go in school?
A. Uh  I graduated.
Q. Anything wrong with your mind?
A. Sir?
Q. Anything wrong with your mind?
A. No, sir.

*1355 Q. Are you under the influence of drugs or alcohol at the present time?
A. No, sir.
¶ 7. Thereafter, the trial court accepted the guilty pleas of Courtney to all charges as being knowingly and voluntarily made, continued the action for sentencing for a period of one year, and sealed the court file.
¶ 8. According to the testimony of Agent Sullivan, he was approached by Judge Davis in September 1994, who indicated that he had heard that Courtney was not cooperating with the Narcotics Task Force as he promised to do. Sullivan stated that the judge issued a warrant for Courtney's arrest shortly thereafter, and Courtney was taken into custody at that time. However, Sheriff Holder of Sunflower County wanted to give Courtney another chance to work with the Task Force, which resulted in Courtney being released once again with the approval of Judge Davis. Upon his release, Courtney apparently did assist the law enforcement officers and was given credit during the period from October 1994, through January 1995, for six or seven drug related arrests, and the recovery of a Task Force camera, as well as the recovery of three or four firearms.
¶ 9. Sullivan testified that at some point during February 1995, he was contacted by Courtney who indicated that he wanted to be sentenced prior to the expiration of one year, since a new law was about to go into effect which would require convicted felons to serve eighty-five percent of their sentences. A hearing was therefore held by the Circuit Court of Sunflower County, Judge Byers presiding, on April 18, 1995, for the purpose of sentencing Courtney, although Courtney requested a thirty-day continuance to allow him to continue his work as an undercover informant and operative for law enforcement officials. According to Courtney's new attorney, Sheriff Holder was out of town at the time but was also requesting a continuance. The State objected to any further continuance and complained about a meeting taking place with the court outside the presence and without the knowledge of the district attorney's representatives. In this regard, the following exchange took place between the court and the assistant district attorney.
¶ 10. BY MRS. BRIDGES: Well, my question, I guess, is has the Sheriff spoken with the Court concerning this man?

BY THE COURT: Yes.

BY MRS. BRIDGES: All right.

BY THE COURT: But it had nothing to do with these offenses or his version of anything. And if you are trying to indicate that I have violated some ethical code of judicial conduct, I suggest you go and make your proper complaint somewhere else.

BY MRS. BRIDGES: No, Your Honor.

BY THE COURT: But if anything  if any attorney  if anybody comes before me about any case where I though the District Attorney should be involved, no discussions have occurred. Now, what I will relate to you is when the sentencing law  we thought it was going to be 

BY MRS. BRIDGES: Eighty-five percent.

BY THE COURT: When the deadline was the February date. That's when we had the discussion.

BY MRS. BRIDGES: All right.

BY THE COURT: And what he stated in his report about any discussion, I don't know what that is.

BY MRS. BRIDGES: Well, I just want the record complete, Your Honor.

BY THE COURT: All right.

BY MRS. BRIDGES: That is what was in his version, and I just want a complete record as to any conversations that occurred outside the presence of the State. I would point out to the Court that at the time this Defendant pled, he pled to all three charges as a subsequent offender, habitual offender, which would carry a maximum of a hundred and eighty years in the penitentiary without parole. The State made no concessions; it objected to anyone trying to offer him any cut deals or anything else, because the State is not allowed to plea bargain  or was not allowed to plea bargain at that time. I don't know what the status of plea bargain is at this time. But the State was not allowed to engage in any plea bargaining, and the State objected *1356 to concession to this Defendant whatsoever, and would still object to it. And I just want a complete record in this case, because there is a possibility of an appeal of the sentence by the State. I just want it complete. This case was set for trial  or; excuse me; set for sentencing before Judge Evans back before the term of Court began, I believe, on the day of pleas or what have you, and the  Judge Evans indicated to the Court at that time that he did not want to sentence any drug cases because there was a meeting scheduled with all the Circuit Judges as to sentences to be handed out in drug cases, and the case was continued for sentencing at that time. And then all of a sudden 

BY THE COURT: Why was he set for sentencing then if it was continued for a year?

BY MRS. BRIDGES: Because he was not cooperating.

BY THE COURT: And when was that?

BY MRS. BRIDGES: That was before the term started, back in February, I believe; whatever day pleas and sentencing was that Judge Evans had.

BY THE COURT: All right.

BY MRS. BRIDGES: And the next thing I know is somebody is telling me that he is going to be sentenced by you on a day when I had no knowledge of it. I inquired about it, and you continued it for a presentence investigation. And I don't know how all that transpired. I don't know 

BY THE COURT: What day are you talking about?

BY MRS. BRIDGES: I don't know what day it was. It was the day that we were in Court, and it's the day that you ordered the presentence, whatever day that was.

BY THE COURT: All right, go on.

BY MRS. BRIDGES: I just want a complete record as to what's happened to this case and why it's happened. It seems to be a case over which I have no control at all anymore, and the State just wants a full record as to what's going on with the case.
¶ 11. In its argument to the trial court as to what sentence Courtney should receive, the State urged the court not to reduce the sentence of Courtney below the minimum sentence that could be imposed by law without parole. In fact, the State contended that the court had no jurisdiction to reduce the sentence since Courtney was a subsequent, habitual offender and the applicable statute required a minimum sentence without parole. On the other hand, Courtney's attorney contended that Courtney was led to believe that if he pleaded guilty and cooperated with the narcotics agents, he would be given some consideration on his sentence in return. Thus, the court was urged to allow Courtney to withdraw his previously entered plea and enter a new plea of guilty, but not as a subsequent or habitual offender.
¶ 12. After hearing testimony from a number of witnesses, the court stated:
¶ 13. BY THE COURT: I didn't ask for any comments. I have been told and it has been reported to me what dealings you've had with the Drug Task Force, and the Court has taken that into consideration. I'm not going to double your sentence.
¶ 14. The court then imposed three thirty-year terms of imprisonment and ordered Courtney to pay fines of $1,000, plus court costs and restitution. The three sentences were ordered to run concurrently.
¶ 15. A motion to vacate the sentence imposed by Judge Byers was filed by Courtney on May 15, 1995, and a hearing was held on the motion on August 31, 1995. The motion alleged, inter alia, that the sentence imposed was in violation of the Constitution of the United States and the State of Mississippi, and that he was sentenced prior to the expiration of one year without good cause. In addition, Courtney alleged that if he had been told that he could not be sentenced to less than thirty mandatory years, he would not have pleaded guilty under any circumstances. Instead, he claimed that the sentencing judge did not inform him of any mandatory minimum sentence that he would be facing as a result of his pleas of guilty. Thus, Courtney claimed that his pleas of guilty were involuntary, not only (1) because he was not advised of the minimum sentence *1357 he was facing and was specifically led to believe that there was no mandatory minimum sentence, but also because Judge Davis did not inform him that he was waiving (2) his right to trial by jury, (3) his right to confront adverse witnesses, (4) his right to protection against self-incrimination, and (5) his right to appeal his conviction and sentence, if convicted by a jury.
¶ 16. At the hearing which was held before Judge Byers on August 31, 1995, all witnesses, including Judge Davis and Agent Sullivan, agreed that Courtney was never informed as to the minimum sentence he could receive if he pleaded guilty to the charges against him. Sullivan did state that he and Sheriff Holder discussed the possibility of recommending three, five, or ten years of imprisonment for Courtney to serve as his sentence. Judge Davis stated that he had on occasion reduced the sentence of an habitual or subsequent offender below the mandatory maximum sentencing guidelines imposed by statute. His criteria for doing so was whether a defendant had made a good faith effort to work with the Central Delta Task Force. He further stated: "[I]t may be challenged as an illegal sentence because it's not the maximum allowable by law, which is what the Statute says the Judge shall sentence him to, but I don't think anybody is going to complain." For his part, Courtney said he was well aware that other habitual offenders in the area had received less than maximum mandatory sentences, and he knew of the discussions between Sheriff Holder and Sullivan concerning the possibility that he might receive as little as three, five, or ten years of imprisonment for the crimes with which he was charged. In fact, he testified that he thought he might even receive a suspended sentence and be placed on probation pending his good behavior. Nevertheless, Judge Byers denied Courtney's motion to set aside his sentence by written order dated September 27, 1995. Even though Courtney's motion had only requested that his sentence be vacated, the judge ordered "that petitioner's motions to vacate sentence and to withdraw guilty plea is not well-taken and should be denied." (Emphasis added). It is noteworthy that throughout these proceedings, it was the State's position that the minimum jail sentence Courtney could have received was thirty years to serve concurrently on all three charges without parole since he was an habitual offender. Judge Davis was of the opinion that the minimum jail time Courtney could have received was sixty years, since Courtney was a subsequent offender, pursuant to Miss. Code Ann. § 41-29-147 (Rev. 1993).

II. THE ISSUES
¶ 17. As stated by the Appellant in his brief, the issues presented for review are whether:
I. CHARLES COURTNEY'S GUILTY PLEA WAS KNOWINGLY AND VOLUNTARILY MADE.
A. The Trial Court Did Not Follow Mississippi Law or The Uniform Criminal Rules of Circuit Court Practice By Failing to Inform Charles Courtney of The Mandatory Minimum Sentence Which He Was Subject to Receive.
B. The Trial Court Did Not Inform Courtney of His Constitutional Rights to a Trial By Jury, to Confront Witnesses and Protection From Self Incrimination.
II. COURTNEY DID NOT RECEIVE DUE PROCESS BY THE TRIAL COURT WHICH SENTENCED HIM.
A. Due To The Sentencing Court Arbitrarily And Capriciously Ending A Continuance Granted Courtney To Assist The Drug Task Force, Courtney Was Unable To Fully Complete Work Which Could Have Mitigated His Sentence.

III. ANALYSIS
¶ 18. The overriding question in this case, given the unusual set of facts with which the court is confronted, is simply whether or not Courtney's guilty pleas were understandably and voluntarily made? The Appellant raises this issue pursuant to the provisions of the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss.Code Ann § 99-39-1-29 (Supp. 1994). As stated in § 99-39-5 of the Act,
¶ 19. (1) Any prisoner in custody under sentence of a court of record of the State of Mississippi who claims ...

*1358 (f) That his plea was made involuntarily; may file a motion to vacate, set aside or correct the judgment or sentence, or for an out-of-time appeal.
¶ 20. If the pleas of guilty entered in this case by Courtney were involuntary as defined by existing law, then not only the Appellant's sentences, but also his guilty pleas, must be vacated. This is true even though Courtney only sought to vacate his sentences and did not specifically seek to vacate his guilty pleas. See Stevenson v. State, 674 So.2d 501, 506 (Miss. 1996); Patterson v. State, 660 So.2d 966, 969 (Miss. 1995).
¶ 21. In Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 1713, 23 L.Ed.2d 274 (1969), the United States Supreme Court addressed the importance of voluntary guilty pleas and stated:
¶ 22. What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought ... and forestalls the spin-off of collateral proceedings that seek to probe murky memories. (citations omitted).
¶ 23. In Boykin, the United States Supreme Court basically held that reversible error occurs where the record at trial does not disclose that a defendant voluntarily and understandably entered his pleas of guilty. Id. at 244, 89 S.Ct. at 1713.
¶ 24. Consistent with the ruling in Boykin, the Mississippi Supreme Court adopted Rule 3.03 of the Uniform Criminal Rules of Circuit Court Practice[3] (UCRCCP) on August 15, 1979, which specifically dealt with the procedure which a trial court was required to follow prior to accepting a guilty plea from a criminal defendant. Rule 3.03, in effect at the time of this action, states in part:
¶ 25. (2) Voluntariness. Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception or improper inducements. A showing that the plea of guilty was voluntary and intelligently made must appear in the record.
(3) Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:
A. That the accused is competent to understand the nature of the charge against him;
B. That the accused understands the nature and consequences of his plea, and the maximum and minimum penalties provided by law;
C. That the accused understands that by pleading guilty he waives his constitutional rights of trial by jury, the right to confront and cross examine adverse witnesses, the right against self incrimination;
¶ 26. Courtney argues that he was never advised of the minimum penalties provided by law in the case sub judice and was never advised that by pleading guilty, he was waiving (1) his constitutional right to trial by jury, (2) the right to confront and cross-examine adverse witnesses, and (3) the right against self-incrimination.
¶ 27. The Mississippi Supreme Court has repeatedly held that a defendant must be advised of "the consequences of pleading guilty; and the minimum and maximum sentences which he or she may receive." See Drennan v. State, 695 So.2d 581, 586 (Miss. 1997), Alexander v. State, 605 So.2d 1170, 1172 (Miss. 1992). In Nelson v. State, 626 So.2d 121, 126 (Miss. 1993), the court went on to explain that it was not sufficient for a court to merely ask a defendant generally if his constitutional rights had been explained to him, nor was it sufficient to simply have the defendant sign a printed form advising the court that he had been sufficiently advised *1359 of his rights. "The court must go further and determine in a face-to-face exchange in open court that the accused knows and understands the rights to which he is entitled." Id. at 126 (emphasis added).
¶ 28. From a review of the record before us, there is no doubt that the trial court failed to advise Courtney that by pleading guilty, he was waiving his constitutional right to trial by jury, his right to confront and cross-examine adverse witnesses, as well as his right against self-incrimination. In addition, the record is clear that the trial court failed to advise Courtney of the minimum sentence or penalties which he might suffer if he pleaded guilty to charges against him, although it is also clear that Courtney was advised that the maximum sentence he was facing was 180 years mandatory to serve without parole and a fine of $6,000,000.
¶ 29. In Vittitoe v. State, 556 So.2d 1062, 1065 (Miss. 1990), the Mississippi Supreme Court set aside a guilty plea where the trial court failed to advise the defendant of the mandatory three year minimum sentence he faced on an armed robbery charge. On the other hand, the court has also stated on a number of occasions that the failure of the trial court to advise the defendant of any mandatory minimum penalty or other constitutional rights which are waived by a guilty plea, will not render a guilty plea to be involuntary if such information has been supplied to the defendant from another source, such as his attorney. Id. at 1064. See Banana v. State, 635 So.2d 851, 854 (Miss. 1994); State v. Pittman, 671 So.2d 62, 64-65 (Miss. 1996); Smith v. State, 636 So.2d 1220, 1224-25 (Miss. 1994). As stated in Ashby v. State, 695 So.2d 589, 592-93 (Miss. 1997):
¶ 30. The law in Mississippi does not automatically reverse a sentence or require an evidentiary hearing when the defendant is not appraised of the mandatory minimum sentence. The defendant must show that she was misled and that the case was misrepresented or the defendant expected to receive a lesser sentence.
¶ 31. However, the burden remains upon the State to prove the voluntariness of a guilty plea by clear and convincing evidence when the issue of voluntariness is raised. Alexander v. State, 605 So.2d 1170, 1172 (Miss. 1992) (citing Wilson v. State, 577 So.2d 394, 397 (Miss. 1991)).
¶ 32. In the case sub judice, the record discloses that Courtney was advised by sources, other than the trial court, including his attorney, that he was waiving his right to trial by jury, to confront and cross-examine adverse witnesses, and also was advised that he was waiving his right against self-incrimination when he pleaded guilty. Moreover, Courtney was familiar with the criminal justice system and was a habitual and subsequent offender. On the other hand, it is equally clear that no one, including the trial judge, either in open court or in chambers, advised Courtney that he was facing a minimum mandatory sentence of thirty years to serve without parole. Thus, we must determine whether Courtney was misled or was legitimately expecting a lesser sentence if he "cooperated" with the narcotics agents.
¶ 33. The district attorney contended throughout the hearing to vacate Courtney's sentence that the trial could give no sentence less than that authorized by applicable statutes, or thirty years to serve in jail without parole. Courtney testified that he would have never plead guilty or agreed to cooperate with the agents if he had known that irrespective of his efforts, the minimum sentence he would receive was thirty years to serve without parole  a sentence tantamount to life imprisonment, given his age. Both Courtney and Cleve McDowell testified that it was a common practice in Sunflower County for the trial judge to give a sentence less than the minimum prescribed by law for habitual criminals, if the defendant sufficiently cooperated with law enforcement officials pursuant to a plea bargaining contract. Former Judge Davis acknowledged that he had given sentences less than the minimum required by statute to cooperating defendants from time to time, depending upon the extent of their cooperation with the authorities, since there was "no one to complain" against such a practice.
¶ 34. It is noteworthy that Agent Sullivan acknowledged that he and Sheriff Holder discussed the possibility that they might recommend *1360 that Courtney receive a sentence of "three, five or ten years" as a result of his efforts to assist narcotics officials. Cleve McDowell likewise stated that he had similar discussions with Sullivan and Holder, as well as with Courtney. This testimony gives credence to Courtney's testimony that he was expecting a sentence of much less than thirty years to serve if he entered guilty pleas in this case. According to McDowell and Courtney, they even discussed the possibility that Courtney might receive a suspended sentence and probation, although McDowell advised Courtney that such a sentence was not possible. Under such circumstances, it simply cannot be said that Courtney's plea of guilty was voluntarily given with full knowledge of the fact that he could be sentenced to no less than a thirty year mandatory sentence to serve without parole. Pursuant to the clear and unmistakable ruling of the Mississippi Supreme Court as to habitual offenders, "[s]entencing under Miss. Code Ann. § 99-19-81 (1972) is not discretionary. If a defendant is a repeat offender falling within the provisions of Miss. Code Ann. § 99-19-81 the trial judge has no alternative but to sentence him under said statute." Harris v. State, 527 So.2d 647, 651 (Miss. 1988). Thus, the trial judge legally had no authority to sentence Courtney to anything less than thirty years mandatory to serve, without parole. In fact, it is arguable whether the trial court had the authority to rule that the thirty year sentences in the three cases should run concurrently. Yet, Courtney was clearly led to believe otherwise through his conversations with McDowell and others and there was a justifiable basis for him to believe that he could receive a sentence of less than the minimum, based upon prior local practices. Accordingly, not only the sentence, but also the guilty pleas of Courtney must be vacated and this action remanded to the trial court for further proceedings.
¶ 35. For the benefit of the trial courts of the State, it should be noted that Rule 8.04(B)(4) of the Uniform Circuit and County Court Rules now expressly prohibits a trial judge from participating directly in any plea discussion with a criminal defendant or otherwise.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY IS REVERSED AND REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE TAXED TO SUNFLOWER COUNTY.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
McMILLIN, P.J., not participating.
NOTES
[1] Section 99-19-81 of the Mississippi Code of 1972 (Rev. 1994) is Mississippi's statute dealing with the sentencing of habitual criminals. It states as follows:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
[2] Section 41-29-147 of the Mississippi Code of 1972 (Rev. 1993) deals with sentences that may be imposed upon second and subsequent offenders of Mississippi's Uniform Controlled Substances Law. It says:

Except as otherwise provided in Section 21-29-142, any person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.
For purposes of this section, an offense is considered a second or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this article or under any statute of the United States or of any state relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs.
[3] Rule 3.03 of the UCRCCP has now been superceded by Uniform Circuit and County Court Rule 8.04, effective May 1, 1995.