JAMES L. DENNIS, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that petitioner-appellant Richard Gerald Jordan’s ineffective-assistance-of-counsel claims are without plausible merit and I concur in the majority’s denial of certificates of appeala-bility for those claims. I disagree with the majority, however, on Jordan’s prosecuto-rial-vindictiveness claim, which I believe deserves encouragement to proceed further.
Over more than a decade, one Mississippi prosecutor sought three times to impose the death penalty against Jordan, but each time a court, first the state trial court, then this federal circuit court, and then the United States Supreme Court, found error and reversed. After the third reversal, the prosecutor acknowledged that, during Jordan’s time in prison during the past decade, he has shown remorse, maintained a good behavior record, and made various efforts to contribute to society despite his incarceration. The prosecutor agreed with Jordan that, rather than the death penalty, a sentence of life in prison without the possibility of parole was appropriate, and the state court sentenced Jordan accordingly. Then, as a result of a subsequent Mississippi Supreme Court decision, Lanier v. State, 635 So.2d 813 (Miss.1994), that addressed and struck down a sentencing agreement essentially identical to Jordan’s own, it became apparent that Jordan’s life-without-parole sentence was invalid under state law. Jordan asked the state courts to remedy the error by changing his life-without-parole sentence to, instead, life with the possibility of parole, which he contended would be proper. In response, the prosecutor told the courts that neither life with or without parole was appropriate: Now, because Jordan had challenged his sentence, the prosecutor would accept nothing less than death, he said. Jordan offered to plead guilty to, once again, a sentence of life without parole, but his pleas were rebuffed. The prosecutor proceeded to trial, and Jordan received a sentence of death.
*414 There is a good claim that these circumstances create a presumption of prosecuto-rial vindictiveness under the doctrine of Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The prosecutor had a “considerable stake” in Jordan accepting his life-without-parole sentence without challenge and, when Jordan did lodge a challenge, the prosecutor “upped the ante” by deciding that a life sentence of any sort was no longer acceptable and only death would now suffice. For the reasons that follow, I respectfully dissent from the majority’s denial of a certificate of appealability on this claim.
I.
On January 12, 1976, Jordan abducted Edwina Marter from her home, drove her to a secluded area in the woods north of Gulfport, Mississippi, and shot her in the back of her head, killing her. During the more than two decades that followed, the same lead prosecutor sought the death penalty against Jordan in four separate trials.
First, in 1976, the year of the abduction and murder, Jordan was convicted of capital murder and was then automatically sentenced to death under then-existing Mississippi law. After the death sentence was imposed, the Mississippi Supreme Court, in Jackson v. State, 337 So.2d 1242 (Miss.1976), mandated bifurcated proceedings in capital murder cases, and Jordan’s trial court granted him a new trial with bifurcated guilt and sentencing proceedings.
In the new trial, Jordan was prosecuted by the same prosecutor and again convicted of capital murder and sentenced to death. This court, holding that the jury was improperly instructed on the death penalty, set aside the death sentence and afforded Jordan a new sentencing trial. Jordan v. Watkins, 681 F.2d 1067 (5th Cir.1982).
In 1983, Jordan was again sentenced to death. This time, the United States Supreme Court found error and vacated the death sentence. Jordan v. Mississippi 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986) (vacating in light of Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)). The Mississippi Supreme Court remanded to the trial court for a new sentencing trial. Jordan v. State, 518 So.2d 1186 (Miss.1987).
The planned resentencing never happened. Instead, in 1991, Jordan, represented by his attorneys, and the state, represented by the same prosecutor, but who had left state employment and entered private practice and was now appearing again for the state as a special prosecutor, reached an agreement under which Jordan would be sentenced to life imprisonment without parole in exchange for his promise not to challenge that sentence. In support of the agreement and the prosecutor’s decision to pursue a life without parole sentence rather than death, the prosecutor, in a document titled “Stipulated Circumstances Mitigating Against the Death Penalty for Richard Gerald Jordan,” cited Jordan’s expressions of remorse, good behavior in prison, and attempts to contribute to society in various ways during his incarceration:
1. That Richard Gerald Jordan has expressed sorrow for this crime in previous court testimony.
5. That Richard Gerald Jordan has not had a discipline record problem in the jail/prison system for the past 15 years, 11 months.
6. That while in prison Richard Gerald Jordan has been creative and attempted to make significant contributions to soci *415 ety through his ideas for inventions to benefit businesses and society.
7. That while in prison Richard Gerald Jordan has assisted bank and bank security personnel in devising methods and approaches to prevent crimes against banking personnel and their families.
8. That members of the religious community have previously testified and are prepared to again testify to the remorse of Richard Gerald Jordan for his crime and to his commitment to personal improvement.
9. That while in prison Richard Gerald Jordan has been a positive force and assisted other prisoners.
In December 1991, Jordan was sentenced to life without parole pursuant to the agreement between him and the special prosecutor.
However, there was a problem: At that time, the Mississippi sentencing statutes allowed sentences of life with the possibility of parole for Jordan’s circumstances but did not allow for life without parole. (Sentences of life without parole were available only for “habitual offenders.” Miss.Code Ann. § 99-19-83.) Several years later, the problem in Jordan’s case would become apparent when the Mississippi Supreme Court handed down its opinion in Lanier v. State, 635 So.2d 813 (Miss.1994), a case in which Jordan was not involved but which addressed circumstances essentially identical to his own. In Lanier, the Mississippi Supreme Court held that a sentencing agreement to life without parole for a crime committed before that sentence was available under statutory law is against public policy and “void ab initio,” meaning that the agreement is invalid and “both parties are placed back in the positions which they occupied prior to entering into the agreement.” Id. at 816-17. After Lanier, it became clear that Jordan was serving an ultra vires sentence pursuant to an invalid agreement.
In April 1994, acting pro se, Jordan filed a motion in the state trial court contending that his sentencing agreement and the life-without-parole sentence imposed thereunder were invalid under Lanier. He asked the court to remedy the ultra vires sentence by modifying it from life without parole to instead life with parole, which presumably would not have run afoul of Lanier given that it was, under Mississippi statutory law, a permissible sentence for Jordan’s offense of capital murder.
Before the court took any action on Jordan’s motion, the Mississippi legislature amended the statutes to allow punishment of either death, life with parole, or life without parole for the offense of capital murder. See 1994 Miss. Laws Ch. 566 (amending Miss.Code Ann. § 97-3-21).
The state trial court denied in full Jordan’s motion to alter his life-without-parole sentence to life with parole. Jordan, still pro se, appealed to the Mississippi Supreme Court. The Mississippi Supreme Court agreed with Jordan in part. The court agreed that Lanier controlled and, accordingly, Jordan’s sentencing agreement and the life-without-parole sentence imposed thereunder were invalid. Jordan v. State, No. 95-KP-113-SCT, 697 So.2d 1190, slip op. at 4 (Miss. July 17, 1997). The Mississippi Supreme Court did not agree, however, that the invalidity should be remedied by changing Jordan’s sentence to life with parole. Rather, the Mississippi Supreme Court vacated Jordan’s sentence and remanded to the trial court for resentencing, and the court went on to say that, on remand, “the State has the right to seek the death penalty.” Id.
The same prosecutor, acting on behalf of the State, did just that. Jordan pleaded with the prosecutor to reinstate the earlier agreement for a sentence of life imprison *416 ment without parole, which, given the state’s post-Lamer legislation, 1994 Miss. Laws Ch. 566, would, he contended, now be permissible. But the prosecutor declined. The prosecutor explained that, because Jordan “violated” the first agreement by asking the court to change his earlier ultra vires sentence, the prosecutor would not again enter into a plea agreement with Jordan for a life sentence. See Jordan v. State, 786 So.2d 987, 1000 (Miss.2001) (describing prosecutor’s representation). There is no indication in the record that the circumstances that previously warranted a life sentence, including Jordan’s remorse, good behavior, and efforts to contribute to society, had changed. See Appellant’s Br. 26 (stating that the circumstances had not changed).
In Jordan’s fourth sentencing trial in 1998, the same prosecutor tried the case, and the jury sentenced Jordan to death. After exhausting his remedies in Mississippi state courts, Jordan sought federal ha-beas relief.[1] On August 80, 2010, the district court denied relief on all of Jordan’s claims. Jordan v. Epps, 740 F.Supp.2d 802 (S.D.Miss.2010). The district court also denied Jordan’s request for a certificate of appealability, required for appeal to this court. See 28 U.S.C. § 2253(c)(1)(A). Jordan now seeks from us the requisite permission to appeal.
II.
We are not called upon to make a decision on the ultimate merits of Jordan’s claim of prosecutorial vindictiveness. Rather, “a prisoner seeking a [certificate of appealability] need only demonstrate ‘a substantial showing of the denial of a eon-stitutional right.’ ” Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (quoting 28 U.S.C. § 2253(c)(2)). “A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court’s resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.” Id. (citing Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). “Finally, any doubt as to whether a [certificate] should issue in a death-penalty case must be resolved in favor of the petitioner.” Pippin v. Dretke, 434 F.3d 782, 787 (5th Cir.2005).
A.
“Vindictiveness” is a term of art referring to the violation of due process that occurs when a governmental actor authorized to pursue or impose punishment, including prosecutors, juries, and judges, retaliates against a criminal defendant for exercising a legal right. Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (prosecutor); Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (jury); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (judge). Jordan’s claim here is of prosecutorial vindictiveness, which can generally be established in two ways:
First, a defendant may prove actual vindictiveness by presenting objective evidence that the prosecutor’s actions were designed to punish a defendant for asserting his legal rights. Second, in certain circumstances, a defendant may *417 show sufficient facts to give rise to a presumption of vindictiveness.
United States v. Saltzman, 537 F.3d 353, 359 (5th Cir.2008) (citations omitted). Here, I focus on circumstances invoking a presumption of vindictiveness.[2]
The principal Supreme Court decision on prosecutorial vindictiveness is Black-ledge v. Perry. There, the defendant was first charged with and convicted of misdemeanor assault in North Carolina District Court. Under then-existing state law, a person convicted of a misdemeanor in District Court had a right to trial de novo in North Carolina Superior Court upon filing a notice of appeal. “The right to trial de novo is absolute, there being no need for the appellant to allege error in the original proceeding. When an appeal is taken, the statutory scheme provides that the slate is wiped clean; the prior conviction is annulled, and the prosecution and the defense begin anew in Superior Court.” 417 U.S. at 22, 94 S.Ct. 2098 (citing state law). Upon the misdemeanor assault conviction, the defendant filed a notice of appeal. After the notice was filed and before any further proceedings began, the prosecutor obtained an indictment from a grand jury charging the defendant with felony assault, which subjected the defendant to greater punishment although the charge covered the same conduct as the initial misdemean- or assault. The Supreme Court held that, in these circumstances, there was a “realistic likelihood of ‘vindictiveness’
A prosecutor clearly has a considerable stake in discouraging convicted misde-meanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prose-cutorial resources before the defendant’s conviction becomes final, and may even result in a formerly convicted defendant’s going free. And, if the prosecutor has the means readily at hand to discourage such appeals — by “upping the ante” through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy — the State can insure that only the most hardy defendants will brave the hazards of a de novo trial.
Id. at 27-28, 94 S.Ct. 2098. Because such a “realistic likelihood of ‘vindictiveness’ ” was apparent on the face of the relevant circumstances, a presumption of vindictiveness arose, the Court held. Id.[3]
The teaching of Blackledge is that, when the circumstances are such that there appears to be a realistic likelihood of prose- *418 cutorial vindictiveness — viz., a realistic likelihood that the prosecutor acted with a retaliatory motive because of the defendant’s exercise of a legal right — the presumption of vindictiveness arises. See United States v. Ward, 757 F.2d 616, 619 (5th Cir.1985). Blackledge identified two elements for establishing circumstances that present a realistic likelihood of prose-cutorial vindictiveness:
The first element is that the prosecutor has a “considerable stake” in maintaining the status quo and discouraging action that could upset such status quo. Blackledge, 417 U.S. at 27, 94 S.Ct. 2098. When the prosecutor pursues and receives a desired outcome in court (i.e., in Blackledge, conviction for misdemeanor assault), the prosecutor has a considerable stake in discouraging the defendant from taking action that risks upsetting that outcome (i.e., appealing). Id.; see United States v. Goodwin, 457 U.S. 368, 376-77, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (“[Blackledge] re-flectes] a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided,” which “might” “subconsciously motivate a vindictive pros-ecutorial or judicial response to a defendant’s exercise of his right to obtain a retrial of a decided question.”); United States v. LaDeau, 734 F.3d 561, 569-70 (6th Cir.2013) (“When the prosecution is forced to do over what it thought it had already done correctly, ... the prosecution’s stake in discouraging the defendant’s exercise of a right may be ‘considerable.’ ” (internal quotation marks and citations omitted)).
The second element is that, in such circumstances where the prosecutor has a considerable stake in discouraging the defendant from taking action that could upset the status quo, the defendant then takes such action and the prosecutor responds by “upping the ante.” Blackledge, 417 U.S. at 27-28, 94 S.Ct. 2098. The prosecutor “ups the ante” when he imposes, or subjects the defendant to the risk of, harsher punishment, for example, by charging the defendant with a more serious offense than the one first charged, Blackledge, 417 U.S. at 27-28, 94 S.Ct. 2098 (first misdemeanor, then felony), by manipulating applicable sentencing factors, United States v. Khoury, 62 F.3d 1138, 1142 (9th Cir.1995) (withdrawal of motion for sentencing reduction), or by taking other “action detrimental to the defendant,” Goodwin, 457 U.S. at 373, 102 S.Ct. 2485. See United States v. Herrera, 640 F.2d 958, 961 & n. 6 (9th Cir.1981) (stating that, “[w]hen the defendant is given a heavier sentence or when the charges against him are increased in retaliation for the exercise of some right, the defendant has clearly been penalized for his action,” and “[t]here may [also] be other factual settings in which a finding of vindictive prosecution would be justified”).[4]
Jordan presents a compelling case that both elements of vindictiveness are present here. Jordan’s prosecutor acknowledged Jordan’s expressions of remorse, good behavior, and efforts to contribute to *419 society and, in recognition of those factors mitigating against the death penalty, he sought to have the state court sentence Jordan to life without parole, and the court obliged. The prosecutor received from the court the result he asked for. Thus, the prosecutor had a “considerable stake” in deterring Jordan from upsetting that result. See Blackledge, 417 U.S. at 27, 94 S.Ct. 2098. But Jordan did risk upsetting, and ultimately did upset, that result when, upon it becoming apparent as a result of Lanier that his life-without-parole sentence was ultra vires under Mississippi law, he exercised his right to petition the state court to remedy the error. The prosecutor then “upped the ante” by insisting that a life sentence of any sort would not suffice, and now, only death would be adequate. See id. at 27-28, 94 S.Ct. 2098. Jordan offered, repeatedly, to plead guilty to, once again, a life-without-parole sentence, but the prosecutor declined and insisted on calling a jury and proceeding to trial for death. The prosecutor never contended, and the State does not contend now, that Jordan’s expressions of remorse, good behavior, and efforts to contribute to society had somehow changed to no longer justify, as they once did, a life sentence. Compare Khoury, 62 F.3d at 1142 (prosecutor rescinded motion for sentencing reduction for acceptance of responsibility and, “the government has pointed to no intervening circumstances that diminished the usefulness of what they previously considered to be substantial assistance”). These circumstances present a strong likelihood of vindictiveness. “[I]f the prosecutor has the means readily at hand to discourage” petitions to the court to remedy plainly ultra vires sentences, “the State can insure that only the most hardy defendants” in positions like Jordan’s “will brave the hazards of’ exercising their legal right. Blackledge, 417 U.S. at 27-28, 94 S.Ct. 2098.
The Ninth Circuit, sitting en banc, addressed substantially similar circumstances and granted the defendant relief in Adamson v. Ricketts, 865 F.2d 1011 (9th Cir.1988). There, the defendant was first charged with first-degree murder. He and the prosecutor entered into a plea agreement under which he agreed to plead guilty to second-degree murder and to testify against two other individuals who had allegedly solicited him to commit the murder. The prosecutor agreed that, in exchange for the defendant’s testimony, he should receive a term-of-years sentence, and the Arizona state trial court accepted the agreement. During the following years, the defendant carried out his obligation to testify against the others during their prosecutions, and they were both convicted. However, the Arizona Supreme Court found error, reversed the convictions of the two, and remanded for new trials. The prosecutor told the defendant that he was again required to testify against the two during their retrials, but the defendant declined, contending that the plea agreement only required his initial testimony and did not require additional testimony on retrial. The defendant offered, however, to testify again on retrial if the prosecutor would, in exchange, agree to his release from prison. The prosecutor continued to maintain that the defendant’s additional testimony was mandated by the plea agreement and threatened that, if the defendant did not testify on retrial, the prosecutor would reinstate the first-degree murder charge against him and would seek the death penalty. The defendant resisted testifying and argued his interpretation of the plea agreement to the state courts. The Arizona Supreme Court held that the defendant breached the plea agreement by refusing to testify, and, thus, the defendant’s conviction and sentence were vacated, and the prosecutor could proceed to *420 seek the death penalty against the defendant, as threatened. Id. (citing Adamson v. Superior Court, 125 Ariz. 579, 611 P.2d 932, 937 (1980)). After the Arizona Supreme Court rejected his interpretation of the plea agreement, the defendant offered to testify on retrial and requested that the prosecutor reinstate the prior status quo by agreeing to him being sentenced, once again, to a term of years. But the prosecutor insisted on pursuing on the death penalty.
The defendant argued to the Ninth Circuit that the “decisions to seek and impose the death penalty against him for the same acts that earlier merited a term of years were vindictively motivated,” and the Ninth Circuit agreed:
The circumstances surrounding the State’s decision to seek the death penalty for [the defendant] clearly reflect the real likelihood of actual vindictiveness and thus give rise to a presumption of vindictiveness. The State sought the death penalty against [the defendant] for the very same conduct for which it had three years earlier found a lesser charge and a [term of years sentence] appropriate. The same sovereign and the same set of facts were involved in both decisions. Most importantly, the decision to file the increased charges directly followed [the defendant’s] assertion of his constitutional right against self-incrimination. These circumstances create the appearance that the State, faced with a disappointing result, acted so as to “up the ante” for the defendant.
Id. at 1018-19 (internal quotation marks, alteration, and citations omitted). “Moreover, the State explicitly rejected [the defendant’s] offer — made after the Arizona Supreme Court rejected his interpretation of the plea agreement’s terms — to testify against [the other two] under the original terms of the agreement. Instead, the State chose to still pursue the death penalty against [the defendant] while letting [the other two] go untried and unpunished. These facts only increase the likelihood of actual vindictiveness and add to the appearance of an improper motive.” Id. at 1018 n. 7.
The material facts in Adamson and Jordan’s case are essentially identical. In both cases, the prosecutors asked the courts to impose sentences other than death, and the courts obliged. Then, the defendants petitioned their state courts to give them some advantage, but the courts ruled against them. And then, the defendants offered to return to the prior status quo, but the prosecutors rebuffed the plea offers and insisted on proceeding to trial to seek death. According to our sister circuit, sitting en banc, in these circumstances, “a presumption of vindictiveness is warranted.” Id. at 1018. The question before us, in this request for a certificate of appealability, is whether “jurists of reason could disagree” as to the merits of the claim. Miller-El, 537 U.S. at 327, 123 S.Ct. 1029. In light of our en banc sister circuit’s ruling, it is apparent that the merits are indeed debatable, to say the least. Jordan, therefore, should receive the requested certificate.
B.
There is an additional circumstance in this case that I believe warrants serious consideration. Jordan points out that he was not the only Mississippi prisoner whose life-without-parole sentence was vacated under Lanier: In addition to Lanier himself, there were two others, Patterson and Stevenson. See Patterson v. State, 660 So.2d 966, 969 (Miss.1995) (vacating life-without-parole sentence under Lanier ); Stevenson v. State, 674 So.2d 501, 506 (Miss.1996) (same). These other prisoners, Lanier, Patterson, and Stevenson, like *421 Jordan, all requested that the Mississippi courts change their life-without-parole sentences to life with parole. See Lanier, 635 So.2d at 815; Patterson, 660 So.2d at 966; Stevenson, 674 So.2d at 502. They all, like Jordan, committed heinous crimes. See Lanier, 635 So.2d at 815 (kidnapping, aggravated assault, and murder of police officer); Patterson, 660 So.2d at 967 (kidnapping and murder); Stevenson, 674 So.2d at 502 (murder of deputy sheriff, committed while jailed, followed by escape). But, Jordan says, despite such similar circumstances, it was only him and not the others who was resentenced to death after their sentences were vacated under Lanier. The difference between him and the others, he says, is that their cases were handled by different prosecutors and his case was handled by the special prosecutor who, although an attorney in private practice at the relevant time, appeared on behalf of the state for Jordan’s case and who had worked on the case for decades. Appellant’s Br. 28. The State’s brief offers no explanation at all for this discrepancy.[5]
This discrepancy, which may have an innocuous explanation, although none has yet been offered, is troubling. It adds to the perception that the special prosecutor’s pursuit of the death penalty against Jordan was not motivated by only legitimate interests but was rather influenced in substantial part by the personal motives of a prosecutor who had spent decades working on the case, had received a result he sought, and who then faced the possibility of that result being upended. Compare Adamson, 865 F.2d at 1018 n. 7 (facts that the State pursued the death penalty against the defendant while allowing two others allegedly complicit in the same murder to “go untried and unpunished” “only increase the likelihood of actual vindictiveness and add to the appearance of an improper motive”). It is a basic and uncontroversial principle that the death penalty should turn on conduct and moral culpability, not the arbitrary happenstance of which prosecutor is assigned to the case. Cf. Eddmonds v. Illinois, 469 U.S. 894, 896, 105 S.Ct. 271, 83 L.Ed.2d 207 (1984) (Marshall, J., dissenting) (“[Tjhere are serious questions about the constitutionality of a scheme that gives the prosecutor the unbridled discretion to select, from the group of individuals convicted of an offense punishable by death, the subgroup that will be considered for death.”). In a case such as this, with colorable allegations that death will be imposed not only arbitrarily, but vindictively too, we should grant permission for a full appeal on the merits.
III.
The majority concludes that Deloney v. Estelle, 713 F.2d 1080 (5th Cir.1983), controls and, as applied here, results in the denial of Jordan’s claim. It does not. In Deloney, the defendant entered into a plea agreement with the prosecutor to have the charges against him reduced. The defendant then contended that he had been “coerced” into the plea agreement and he asked to withdraw his guilty plea and proceed to trial, where the prosecutor would have to prove his guilt. The court granted the request and Deloney then went to trial on the original, pre-plea-bargain charges. After he was convicted, he contended that it was vindictive for the prosecutor to try him on the original, pre-plea-bargain charges rather than the lesser charges that were offered during plea bargaining. *422 Id. at 1085 (“Deloney’s claim reduces itself to a bootstrap device in three steps: First, plea bargain to get the charges cut down. Second, get the plea bargain set aside for lack of understanding and coercion of his agreement by his attorney. Third, insist that it would be prosecutorial vindictiveness now to be prosecuted at the same level of jeopardy to punishment that the original indictments called for.”). Thus, the question presented was, may a defendant use the prosecutorial vindictiveness doctrine to insist on receiving the benefits of an offer made during plea bargaining when the defendant does not plead guilty but instead proceeds to trial? We held, unsurprisingly, that “[t]he law does not find this to be prosecutorial vindictiveness.” Id. Our opinion in Ehl v. Estelle, 656 F.2d 166, 171 (5th Cir.1981), which we cited in Deloney, 713 F.2d at 1085 n. 9, explains the basic rationale well:
We have not found a case from any jurisdiction that holds that a defendant can accept a plea bargain, take back his part of the bargain, insist upon a trial on the merits, and yet bind the prosecutor, and thus the Court, on the original promised recommendation of punishment after the prosecutor has lost all benefits of the bargain. To permit this situation would undercut the entire purpose and aim of the plea bargaining process.
656 F.2d at 171 (emphasis added).
Jordan has done no such thing. True, Jordan lodged a motion with the state court attempting to change his sentence. But, during the relevant events, Jordan never sought to hold the government to its burden of proof and thus take from the government its “benefits of the bargain.” His motion for sentence modification presented a purely legal argument (viz., that his sentence was ultra vires under Lanier ), and one that was correct. After the Mississippi Supreme Court agreed with Jordan’s legal argument but did not afford him the remedy he requested, Jordan still did not seek to hold the prosecutor to the government’s burden of proof. Rather, he sought to reinstate the prior life sentence the prosecutor had already represented to the court was appropriate because of Jordan’s individual circumstances, including his remorse and good behavior — circumstances that nobody contended had changed. It was the prosecutor, not Jordan, who abandoned the government’s previous benefits of the bargain and insisted upon a trial on the merits. Hence, Deloney does not apply here, and to hold that it does is to extend the decision beyond its reach. Jordan’s right to petition the courts for redress is precisely the sort of legal right that should be protected against retaliation by the due process clause as interpreted in Blackledge.

TV.

Jordan has shown sufficient merit to the prosecutorial vindictiveness claim to warrant his appeal being considered on the full merits. I respectfully dissent from the majority’s denial of a certificate of appeal-ability on this claim.

. The Mississippi Supreme Court affirmed the conviction on direct appeal on April 26, 2001. Jordan v. State, 786 So.2d 987 (Miss.2001). In March 2005, the Mississippi Supreme Court, holding that all of Jordan’s claims were without merit, denied Jordan’s application for leave to proceed on his claims for state post-conviction relief. Jordan v. State, 912 So.2d 800 (Miss.2005).

. Jordan contends that, regardless of whether there is a presumption of prosecutorial vindictiveness here, the prosecutor's representation to the court, that he would not again accept life imprisonment because Jordan had “violated” their earlier agreement, constitutes an admission of retaliatory intent. It is debatable whether the prosecutor's statement constitutes such an admission. Regardless of whether it does, however, I think the possibility of a presumption of retaliation warrants granting a certificate of appealability here, so I would leave resolution of how to construe the prosecutor's statement to the merits panel.

. The Court explained that the "rationale” for creating a presumption rule that is based on the circumstances of the case and does not require “evidence” of vindictive intent was that, “since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the [prosecutor].” Id. at 28, 94 S.Ct. 2098 (quoting Pearce, 395 U.S. at 725, 89 S.Ct. 2072). “A person convicted of an offense is entitled to pursue his statutory right to trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.” Id.

. The presumption of vindictiveness, however, will not arise when the circumstances are such that the prosecutor’s actions are reasonably justified by an innocuous explanation. Blackledge, 417 U.S. at 29 n. 7, 94 S.Ct. 2098 (“This would clearly be a different case if the State had shown that it was impossible to proceed on the more serious charge at the outset”); United States v. Krezdorn, 718 F.2d 1360, 1365 (5th Cir.1983) (en banc) ("If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor’s decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created.”)

. The closest the State’s brief gets to addressing the issue is the following comment: "There are at least two capital defendants who entered into the same type agreements serving their life without parole sentence who have never challenged the life without parole provision in their plea agreement.” Appel-lee’s Br. 27 n. 3.